James F. WILSON *v.* STATE of Arkansas

CA CR 96-600 939 S.W.2d 313

Court of Appeals of Arkansas
Division IV
Opinion delivered February 19, 1997

*William R. Simpson, Jr.*, Public Defender, by: *Llewllyn J. Marczuk*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Chief Judge. On January 3, 1996, the appellant was tried before the court and convicted of attempted theft by deception, a Class C felony. Appellant was sentenced as an habitual offender to five years in the Arkansas Department of Correction, with five days of jail credit. Appellant contends on appeal that the evidence was insufficient to support the conviction of theft by deception, and that the trial court erred in denying him jail credit of 400 days. We find no error and affirm.

Where the sufficiency of the evidence is challenged on appeal in criminal cases, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the appellee and affirm if there is substantial evidence to support the conviction. *Muhammed v. State*, 27 Ark. App. 188, 769 S.W.2d 33 (1989). Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable and material certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Wilson v. State*, 277 Ark. 43, 639 S.W.2d 45 (1982). The fact that some evidence is circumstantial does not render it insubstantial. *Alford v. State*, 33 Ark. App. 179, 804 S.W.2d 370 (1991).

The evidence before the trial court indicated that Nancy Babb was contacted by a friend who worked at the American Legion. Ms. Babb's son was involved in activities that had resulted in criminal charges being brought against him. Ms. Babb went to the American Legion and met with the appellant, James Wilson, who informed her that he was the director of an organization called FAMM. Ms. Babb testified that the appellant told her he was purchasing land and a home in Cabot for the purpose of operating a program to keep juveniles out of criminal trouble and jail.

Appellant told her that her son would have to go through his nine-month program to stay out of jail.

Ms. Babb testified that the appellant later contacted her by telephone, and they met at the American Legion a few more times. At appellant's request, Ms. Babb drove him to the prosecutor's office and the Pulaski County Jail, allegedly for appellant to make some contacts concerning her son.

On January 4, 1995, after appellant telephoned her and stated, "The money's here. I need you to come up here," Ms. Babb met with him at the American Legion for the last time. When Ms. Babb arrived, her boyfriend, Mike Laneer, and appellant were talking about Mr. Laneer having money to pay the appellant. Mr. Laneer left, and Ms. Babb and appellant discussed how the appellant was going to help her son stay out of jail. The appellant told Ms. Babb that her son would not have to serve any jail time, but would have to participate in his nine-month program. He told Ms. Babb that "it's going to cost you Five Thousand Dollars." When she asked how he could guarantee that her son would not go to prison and asked what all the money was for, the appellant stated, "part of it will go to the judge, part of it to the prosecutor." She asked the appellant if this was an "under the table" transaction, and the appellant told her it was. Appellant pressured Ms. Babb to go to Mr. Laneer's home that night to get the money, but she told him to call her in the morning.

The next morning, January 5, 1995, Ms. Babb called Larry Jegley at the prosecutor's office to tell him what was occurring. After she explained everything, Mr. Jegley had North Little Rock Police Detective Jim Scott contact Ms. Babb. At one point Ms. Babb was talking to the appellant when Detective Scott telephoned. She informed the detective of the situation and put him on a three-way telephone call with the appellant, without the appellant being aware that the detective was monitoring the call. The appellant went over the plan step by step, and they arranged to meet at Mr. Laneer's auto parts store later that morning.

Detective Scott and Detective David Dallas met Ms. Babb at the parts store prior to the appellant's arrival. Ms. Babb worked at this store as her boyfriend's (Mr. Laneer's) secretary and had an

office with a two-way mirror. The store was also equipped with a video and audio monitor. The detectives positioned the camera so they could observe the appellant and Ms. Babb prior to his arrival.

When the appellant arrived, he and Ms. Babb went over the plan one final time while the detectives listened. Detective Scott corroborated Ms. Babb's testimony and further testified that the appellant explained to Ms. Babb that for five thousand dollars he would have her son's charges taken care of by paying off certain officials. Detective Scott testified that the appellant stated he would be keeping seven hundred and fifty dollars for himself and the rest would go to the prosecutors and judges, but never mentioned any names. Appellant agreed to accept a check for three thousand dollars that day and set up a payment plan for the two-thousand-dollar balance. Both Ms. Babb and Detective Scott testified that Ms. Babb wrote the appellant a check for three thousand dollars, and the appellant wrote out a receipt. Ms. Babb gave the check to the appellant and then went out of the store to her vehicle. Mr. Laneer, who corroborated this testimony, informed the appellant to wait fifteen minutes before cashing the check so Mr. Laneer could transfer sufficient funds into the account to cover the check. As the appellant exited the building, the detectives exited the office and arrested him with the check and the receipt in his possession.

The appellant contends on appeal that the evidence was insufficient to support his conviction. He specifically argues that he did not obtain anything of value because the check was "hot," and that he did not deceive the victims (Ms. Babb and Mr. Laneer) because they knew it was a scam. While the appellant cites several cases for his argument that there must be value and deception, the cases cited deal with theft and theft by deception that were actually consummated. The appellant in this case was convicted only of *attempted* theft by deception which makes only his state of mind and what he believed the facts to be the issue, not whether the check had some actual value, or whether he actually "deceived" the victims.

Arkansas Code Annotated section 5-36-103(a)(2) (Supp. 1995), provides that a person commits theft of property if he "knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof." Arkansas Code Annotated section 5-36-101(A)(i) and (v) (Repl. 1993), defines deception as:

> Creating or reinforcing a false impression, including false impressions of fact, law, value, or intention or other state of mind that the actor does not believe to be true[.]

> * * *

> (v) Employing any other scheme to defraud;

Arkansas Code Annotated section 5-3-201(a)(1) and (2) (Repl. 1993) states:

> (a) A person attempts to commit an offense if he:

> (1) Purposely engages in conduct that would constitute an offense *if the attendant circumstances were as he believes them to be*; or

> (2) Purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense *whether or not the attendant circumstances are as he believes them to be.* (Emphasis supplied.)

In this case, the appellant believed he was deceiving the victims by telling them that he could pay off the prosecutor and judge to keep Ms. Babb's son out of jail. At the time of his arrest, the appellant had a check for three thousand dollars that he believed could be drawn on sufficient funds in just a few minutes. The trial court found that the appellant attempted to take the three thousand dollars and that he believed he had accomplished just that at the time of his arrest. We cannot say that this evidence was insufficient to support the court's decision.

The appellant contends in his second point that the trial court erred in not giving him 400 days jail credit toward his sentence. Appellant argues that, because he was arrested on January 5, 1995, and was not sentenced until February 14, 1996, some 405 days' later, he was entitled to 405 days' jail credit rather than the five days that the trial court gave him.

 Arkansas Code Annotated section 5-4-404 (Repl. 1993) provides that a defendant shall be given credit for time spent in custody against the sentence for which he is being held for trial. However, in this case the court found that the appellant was on parole at the time of his arrest on January 5, 1995, and his parole was revoked January 10, 1995. As the court correctly held, the appellant was actually being held after January 10, 1995, for his parole violation and not simply pending a trial on the present charge. As the State points out, the supreme court has held that a defendant is not entitled to jail credit on a subsequent sentence for time spent in jail on a parole revocation, even if the parole revocation resulted from the crime for which he received the subsequent sentence. *Hughes v. State*, 281 Ark. 428, 664 S.W.2d 471 (1984). We find no merit to the appellant's argument concerning jail credit.

Affirmed.

NEAL and ROAF, JJ., agree.