Tom DONOVAN *v.* STATE of Arkansas

CA CR 99-1096 32 S.W.3d 1

Court of Appeals of Arkansas
Division III
Opinion delivered October 25, 2000
[Petition for rehearing denied November 29, 2000.]

*Witt Law Firm, P.C.*, by: *Ernie Witt*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Sandy Moll*, Ass't Att'y Gen., for appellee.

K MAX KOONCE, II, Judge. Appellant was charged with theft by deception pursuant to Ark. Code Ann. § 5-36-103 (Repl. 1997). The felony information alleged that appellant unlawfully obtained property having a value of $2,500 or more from Gail Merritt between January 1, 1994, and September 30, 1994. A jury found appellant guilty of theft by deception and recommended a ten-year suspended sentence and a fine of $10,000. After the sentencing hearing, the trial court ordered that appellant serve a three-year suspended imposition of sentence, pay a $500 fine and court costs, and pay restitution to the victim in the amount of $60,000. The trial court modified the sentence by suspending the $500 fine and adding $500 to appellant's court costs. Appellant raises nine points on appeal. We affirm in part and remand in part.

On May 9, 1997, appellant was arrested after a warrant was issued by the Little Rock Municipal Court Clerk. Judge Lee Munson made a finding of probable cause for theft based on an affidavit of an investigator from the prosecutor's office. A probable-cause hearing was set for July 17, 1997. In the interim, the Pulaski County Prosecutor's Office filed a felony information with the Pulaski County Circuit Clerk charging appellant with theft by deception. The appellant filed a motion to quash the felony information on the grounds that the arrest warrant was issued without an independent probable-cause determination. The trial court denied the motion. A jury trial was held over six days in December 1998 and January 1999.

Prior to trial, appellant filed a motion in limine seeking to exclude any testimony of appellant's cocaine habit and testimony that any of the money allegedly stolen was used to purchase cocaine. The State contended that the evidence of appellant's drug

use would be used to show motive for the theft and that the checks were unauthorized. The trial court denied the motion in limine.

Gail Merritt, the victim, testified at trial. Ms. Merritt testified as to how she met appellant at a co-dependency workshop in 1988. She and appellant became close friends and eventually became intimate. Ms. Merritt was a speech-pathologist and opened her own business called Total Language Communication Clinic (TLCC). Appellant, an attorney and accountant, began to prepare Ms. Merritt's taxes in 1989 and offered professional services to her business as their relationship evolved. Ms. Merritt broke off the relationship in 1993, but they remained friends, and appellant continued to handle TLCC's bookkeeping. Ms. Merritt testified that she originally agreed to pay appellant $75 a month for his services. Later, they agreed that appellant would receive $150 per month, and appellant typed up a document that provided what services he would render. The agreement was introduced into evidence. Ms. Merritt testified that she did not authorize appellant to write himself checks on her business account above the $150 per month.

Ms. Merritt testified that appellant was authorized to sign checks for the business and to pay bills, which were sent to his home. She did not suspect there were any problems with appellant until July 1995, when her payroll checks bounced. Ms. Merritt called appellant at home, and he informed her that he would take care of it, explaining that he had forgotten to make a deposit. Those payroll checks cleared, but the payroll checks for a subsequent period bounced and never cleared, according to Ms. Merritt. Ms. Merritt stated that she called appellant on September 12, 1995, and that he told her he talked to the bank and that they were having internal problems and that he had an appointment with the bank. After calling the bank and discovering that there was no appointment, Ms. Merritt drove to appellant's house. Ms. Merritt asked appellant whether he had been stealing from her, and he admitted to stealing $30,000. He told Ms. Merritt he was using the money to buy crack cocaine and pay personal bills. Ms. Merritt stated that during her discussion with appellant, his brother, Joe Donovan, came out of the back of appellant's house where he kept an office.

Ms. Merritt testified that she entered into a settlement agreement at that time believing appellant only owed her $30,000. The agreement provided, *inter alia*, that Ms. Merritt would receive

$10,000 immediately, the equity in the house she and appellant had purchased together in 1992, and 42,000 shares of Harvey Gene stock. In return, Ms. Merritt agreed not to prosecute or sue appellant, or to file a bar complaint against appellant. Ms. Merritt later discovered that appellant had taken $62,000 from her business.

Ms. Merritt testified as to each of the approximately 148 unauthorized checks written by appellant. Numerous checks were written on TLCC's account by appellant to himself and were cashed. Others were written on TLCC's account by appellant to himself and deposited into his law firm account. Checks were also written by appellant to people Ms. Merritt did not know.

The State called Lisa Rennie, the regional support manager for Nations Bank, to testify. Ms. Rennie testified that the signature card for the TLCC account contained the names Tom Donovan and Gail McConnell (Merritt). She stated that she examined the TLCC account for 1994 and 1995, and that numerous checks contained appellant's signature. A number of these checks were written for cash.

Johnnie Degler also testified at trial. Mr. Degler testified that he met appellant on the street and got into his car. Mr. Degler identified part of State's Exhibit 5 as a check that appellant gave him to cash. This check contained Mr. Degler's endorsement on the back of the check.

Odetta Stansfield was called to testify by the State. She identified appellant and testified that appellant stopped her on 28th Street near Martin Luther King to ask where he could get some crack. Appellant gave her cash, and she bought some crack from a friend. Ms. Stansfield identified State's part of State's Exhibit 42 as a check appellant wrote her for $150 on May 3, 1995, which contained her endorsement. Ms. Stansfield stated that she and appellant would go to Clayborn Thrower's house to smoke crack, and that she had smoked crack at appellant's apartment.

Regina Staggs also testified that she and appellant smoked crack together. She stated appellant gave her a check to purchase crack cocaine. Ms. Staggs identified this check containing her endorsement, which was part of State's Exhibit 5.

Another witness for the State, Lisa Wiley, testified that appellant gave her a check to purchase crack cocaine. Appellant had represented her in a criminal proceeding. She identified part of State's Exhibit 43 as a check appellant had given her for $700 dated September 5, 1995. She testified that she had cashed the check and went with appellant to purchase crack. The entire $700 was used to buy crack.

Frederick Sheldon, testifying for the State, claimed that appellant purchased crack cocaine from him. Sheldon identified four checks given to him by appellant. Sheldon testified that one check included within State's Exhibit 41 was given to him by appellant as a loan. State's Exhibit 43 included two checks, one dated September 2, 1995, in the amount of $120 and another dated September 6, 1995, in the amount of $210, that Sheldon used to buy drugs. Sheldon also testified that he bought drugs with a check included within State's Exhibit 5 that was dated August 23, 1995, and issued for $200.

A representative of National Bank of Arkansas, Barbara Simpson, testified that Tom Donovan d/b/a Donovan Law Firm had an account at the bank. She testified as to which of the checks contained within the State's exhibits were deposited into the Donovan Law Firm account.

James Vandiver, an investigator from the prosecutor's office, testified about his investigation of the case. He stated that the amount of the checks the jury had in their possession amounted to $60,285.65. He detailed the number of TLCC checks and the value of the checks introduced.

After the State rested its case, appellant moved for a directed verdict on the basis that the State did not prove Ms. Merritt owned TLCC. The trial court denied the motion. The court adjourned for the evening, and upon reconvening the next day, appellant made two more motions for directed verdict. One was based on appellant's contention that the jury was left to speculate as to which of the 158 checks were unauthorized, and the other was based on sufficiency of the evidence incorporating the two previous motions. The trial court denied both motions.

The appellant called several witnesses to testify in his defense. Joe Donovan identified several checks that he wrote to Ms. Merritt

as part of a settlement made on appellant's behalf. He had power of attorney over appellant at that time. Joe Donovan testified that on September 12, 1995, while working at appellant's house, he heard appellant tell Ms. Merritt that he owed her $20,000 to $22,000. Joe Donovan thought that his brother's statement was an admission that he had stolen the money. Joe Donovan testified that at that time his brother had quit practicing law and devoted his life to running Ms. Merritt's errands. He testified that appellant never mentioned that he did legal work for Ms. Merritt and that she owed him money.

Appellant testified in his own defense. He testified that Ms. Merritt agreed to pay him $120 per hour for legal services and $35 per hour for non-legal work, in addition to the $150 per month. Although he stated that there was a written agreement, he did not have a copy. He testified about the legal work he did for Ms. Merritt and how many hours he spent. However, appellant did not introduce any bills, time sheets, or an agreement pertaining to his fee for legal services. Appellant testified that he had permission to write the checks at issue, and that Ms. Merritt knew he was writing those checks. He explained that half of the money he got out of the TLCC account went to Ms. Merritt, and that he had regular meetings with Ms. Merritt where the financial affairs were discussed. He further explained that he would deposit money in the TLCC account or Ms. Merritt's personal account if it became overdrawn. He denied ever using money that he was not authorized to use. With regard to TLCC's July 1995 payroll checks that bounced, appellant explained that this was due to an electronic funds transfer that had not been deposited into TLCC's account and that the checks eventually cleared.

At the close of appellant's case, appellant renewed his motions for directed verdict on the same grounds as previously set forth. The motions were denied. Appellant renewed his motions for mistrial made during the course of the trial and made a new motion for mistrial with regard to the admission of evidence regarding appellant's cocaine use. The court also denied these motions.

The jury found appellant guilty of theft of property and found that the value of the property exceeded $2500. The jury recommended that appellant serve a ten-year suspended sentence and pay a fine of $10,000. After the sentencing hearing, the trial court

ordered appellant to serve a three-year suspended imposition of sentence, to pay a $500 fine plus court costs, and to pay restitution to Ms. Merritt in the amount of $60,000. The sentence was subsequently modified by the $500 fine being suspended and added to appellant's court costs. Appellant raises nine points on appeal.

*1. Whether the trial court erred*
*by denying appellant's motion for a directed verdict*

■■ We will address appellant's sufficiency argument first. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Breedlove v. State*, 62 Ark. App. 219, 970 S.W.2d 313 (1998). This court affirms the conviction if it is supported by substantial evidence. *Wilson v. State*, 56 Ark. App. 47, 939 S.W.2d 313 (1997). When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Bailey v. State*, 334 Ark. 43, 972 S.W.2d 239 (1998). Evidence, whether direct or circumstantial, is sufficient to support a conviction if it is forceful enough to compel reasonable minds to reach a conclusion one way or the other. *Wilson v. State*, 332 Ark. 7, 962 S.W.2d 805 (1998). We do not, however, weigh the evidence presented at trial, as that is a matter for the fact finder; nor will we weigh the credibility of the witnesses. *Id.* Only the evidence supporting the verdict will be considered. *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998).

Arkansas Code Annotated section 5-36-103 provides that a person commits theft of property if he knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof. Further, Ark. Code Ann. § 5-37-101(3)(A)(v) (Supp. 1999) states that deception includes "[e]mploying any other scheme to defraud." The State proceeded under this meaning of theft by deception.

At the close of the State's case, appellant made a motion for a directed verdict arguing that the State did not prove Ms. Merritt was a shareholder or owner of TLCC and that the checks at issue were written on the TLCC corporate account. The trial court denied the motion. The court recessed and upon reconvening the next day, the appellant made additional motions for directed verdict on the grounds that the jury was left to speculate whether the 158

checks introduced were authorized or unauthorized and based on the sufficiency of the evidence. Appellant renewed these motions for directed verdict at the close of all the evidence.

Ms. Merritt testified that she was a speech pathologist and had opened a private practice called TLCC. Ms. Merritt later took a partner, Beverly Rory, whom she practiced with until February or March 1994. Ms. Merritt's name was on the signature card for the TLCC account and referred to the TLCC account as her account. Ms. Merritt testified that appellant admitted to stealing her money, and that she had to close TLCC as a result of appellant's actions. Ms. Merritt specifically testified as to which checks were unauthorized. Ms. Merritt testified that appellant was only entitled to $150 per month for his services, although she testified that two $150 checks in February and March were unauthorized. In addition to the two checks for $150 written in February and March, appellant also challenged whether a check for the Freidman Seminar was authorized.

Appellant argues that the jury was left to speculate whether the checks introduced included the $150 per month owed to appellant and whether the Freidman Seminar check was authorized. This amounts to only three of the 158 checks introduced. In addition, four witnesses identified checks introduced by the State as checks appellant gave to them to purchase drugs. Based on the evidence presented at trial, we hold there is substantial evidence to support the conviction.

*2. Whether the trial court abused its discretion when it allowed the State to introduce evidence of appellant's use of crack cocaine in the State's case in chief*

Prior to trial, appellant filed a motion in limine seeking to exclude evidence that he wrote checks on the TLCC's account to purchase crack cocaine. The State responded that such evidence was relevant to prove motive. The trial court denied appellant's motion in limine. Appellant's first point on appeal is that the trial court abused its discretion when it allowed the State to introduce evidence of appellant's crack cocaine use into evidence.

Arkansas Rule of Evidence 404(b) provides as follows:

*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence that is offered pursuant to Rule 404(b) must be independently relevant. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). Evidence is independently relevant if it tends to prove a material point and is not introduced solely to prove that the defendant is a bad person. *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998). The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court, and this court will not reverse absent a showing of manifest abuse. *Id.* In addition, the trial court has the discretion to determine whether prejudicial evidence substantially outweighs its probative value, and its judgment will be upheld absent a manifest abuse of discretion. *Haire v. State*, 340 Ark. 11, 8 S.W.3d 468 (2000).

Appellant contends that the State, at one of the omnibus hearings, represented that it "had discovered almost $60,000 worth of checks that had been written by Mr. Donovan to himself and to other people in order to purchase crack cocaine." The State's case focused on 158 unauthorized checks written by appellant from January 1994 through September 1995. Appellant contends that the State only showed that seven of the checks were written to purchase crack cocaine and that the amount of the seven checks totaled $1,710, which is far less than the $60,000 that the State alleged was stolen by appellant. Appellant also argues that the first of the seven checks was written on May 3, 1995, and the last in August or September, thus covering a short part of the alleged twenty-month scheme, and further that there was no proof appellant used crack cocaine prior to May 3, 1995. Based on this, appellant argues that any probative value was substantially outweighed by the danger of unfair prejudice. The State argues that evidence of crack cocaine use was offered to show motive for theft and that Ms. Merritt did not authorize such expenditures.

The admission of evidence regarding appellant's cocaine use was proper under Rule 404(b) because it goes to prove motive for theft and that the checks were unauthorized. Although arguably prejudicial, the evidence was highly probative in that it constituted

proof of motive and evidence that the checks were unauthorized . The probative value was not substantially outweighed by the danger of unfair prejudice. We cannot say that the trial court abused its discretion in allowing this evidence.

### 3. Whether the trial court abused its discretion by refusing to declare a mistrial

Appellant contends under this point on appeal that the trial court abused its discretion by denying three motions for mistrial and by making two serious errors. We address each point of error separately.

██ Trial courts have broad discretion in deciding evidentiary issues, and those decisions are not reversed absent a clear abuse of discretion. *Harris v. State*, 339 Ark. 35, 2 S.W.3d 768 (1999). It is well settled that a mistrial is an extreme remedy that should be granted only when the error is beyond repair and cannot be corrected by curative relief. *Marta v. State*, 336 Ark. 67, 983 S.W.2d 924 (1999). "An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial." *King v. State*, 317 Ark. 293, 297, 877 S.W.2d 583, 586 (1994). The trial court has wide discretion in granting or denying a motion for a mistrial, and we will not disturb the court's decision absent an abuse of discretion or manifest prejudice to the movant. *Id.*

██ Appellant moved for a mistrial after the State made the following statement during closing argument:

> And your common sense says that nobody, no one working or presenting themself [sic] as a professional is going to work their client's bank account into a big zero. Does that make sense to you? Absolutely not. I don't believe for one minute that there's one of you, that one of you could say, 'Well, of course, I hired professional services and paid them so much money and I — '

Appellant objected, arguing that the State made a "golden rule argument" by asking the jurors to place themselves in the position of the victim. After argument by the parties, the court sustained the objection, but denied the motion for mistrial. The trial court further cautioned the jury that they were not to receive an argu-

ment as placing themselves in that particular position, but rather limit themselves to a consideration of what has been presented at trial. In addition to the trial court's instruction that the jury was not to place themselves in a particular position, the trial court gave the standard jury instruction that remarks made during arguments by the attorneys were not evidence and should be disregarded. In light of these circumstances, we cannot say that the trial court abused its discretion by denying the motion for mistrial on the basis of the prosecutor's remark. *See King v. State, supra.*

■ Appellant next argues that the trial court should have granted its motion for mistrial after the prosecutor made the following statement in closing argument:

> Ladies and gentlemen, good old boys are no longer allowed to take advantage of the system. We put a stop to that a long time ago. And lawyers should be held accountable just like everybody else. As a matter of fact, they should be held to a higher standard, because they take an oath to represent the law. They take an oath to represent their clients, to protect their clients.

Appellant's counsel made a timely objection contending the prosecutor had changed the burden of proof. The trial court made the following admonition:

> Ladies and gentlemen of the jury, the court is going to admonish you to disregard any statement that Mr. Donovan is held to a higher standard because he is a lawyer. He is not. Under Arkansas Law, there is no provision that under the Theft of Property Statute or any instruction you will receive saying that lawyers are supposed to be treated differently when they sit before this court as a defendant. The legislature has not made that such a law. And you are to be bound only to the instructions that have been given you and the definitions of what constitutes theft of property.

According to the appellant's abstract, the trial court never made a ruling on the motion for mistrial, nor did appellant request a ruling. Therefore, if any impropriety occurred, it was expunged by the admonition. *See Betts v. State,* 317 Ark. 624, 882 S.W.2d 671 (1994).

Appellant made another motion for mistrial during the State's rebuttal closing argument after the prosecutor stated:

> You all will have a chance to look at the reconciliation statements, January, February, March and April. They are saying it was

Nineteen Ninety Five. You look at them. Those were the only ones that — that were presented. Why don't you think there were any others that were presented? He said —

Appellant's counsel objected and moved for a mistrial, arguing that the State misled the jury because the four reconciliation statements were the ones given to appellant by the prosecuting attorney during discovery. At the sidebar conference, appellant's counsel informed the State that the reconciliation statements were from 1994, not 1995, and argued that the State was attempting to mislead the jury and that the statement was prejudicial. There was a significant discussion during appellant's testimony at trial with regard to the reconciliation statements. Appellant's counsel argued that there were only four because that was all that the State had in its file. However, the State argues that the four statements were not in its file, but rather that the appellant created those statements. The appellant admitted that the statements were printed from his computer.

█ The trial court sustained the objection, but denied the motion for mistrial. The trial court did not give a curative instruction, nor did appellant request such an instruction. The trial court's failure to give an admonition to the jury is not prejudicial error where the instruction or admonition was not requested below. *Langford v. State,* 332 Ark. 54, 962 S.W.2d 358 (1998). We cannot say that the trial court's failure to grant a mistrial on this point constitutes an abuse of discretion.

█ Appellant next contends that the trial court made a serious error when it overruled his objection made when the prosecutor read from the transcript of Joe Donovan's testimony during closing argument. Appellant has not alleged how he was prejudiced. The law is well settled that prejudice is not presumed, and we will not reverse absent a showing of prejudice. *Camp v. State,* 66 Ark. App. 134, 991 S.W.2d 611 (1999).

█ Finally, appellant argues that the prosecutor erroneously told the jury that Clayborn Thrower testified that he smoked crack cocaine with appellant. Appellant did not make an objection below, and therefore cannot raise this argument on appeal. *See Marts v. State,* 332 Ark. 628, 968 S.W.2d 41 (1998).

### 4. Whether the trial court abused its discretion in refusing to declare a mistrial during the trial

Under this point on appeal, appellant alleges that the trial court abused its discretion by denying seven motions for mistrial made during the course of trial. Each motion will be discussed separately.

 First, appellant moved for a mistrial when the prosecutor told the jury during opening argument that appellant was stealing money not only to support his cocaine habit, but also to support his floundering law practice. Appellant argued that at one of the omnibus hearings, the State did not inform appellant it intended to prove that appellant stole money from Ms. Merritt to support a floundering law practice. The State, although requested by appellant, never gave a bill of particulars. The State responded that appellant and his counsel were aware of the evidence it intended to prove at trial, which included that appellant deposited a number of unauthorized checks into his law firm account. Appellant was also aware that a representative of National Bank of Arkansas, where appellant maintained his law firm's account, would testify that appellant made these deposits. Based on these facts, we cannot say that the trial court abused its discretion in denying the motion for mistrial.

 Second, appellant moved for a mistrial because Ms. Merritt, when asked on cross-examination what co-dependency was, answered and began to ramble about how appellant was treated at a drug rehabilitation center in a program based on twelve steps. Appellant contends this statement was prejudicial because it introduced prejudicial material about the appellant when she had not been asked any question about him. The State responds that any error was harmless because there were many other references to appellant's drug treatment. We agree that appellant has failed to demonstrate how he was prejudiced. As we previously stated, prejudice is not presumed, and we will not reverse absent a showing of prejudice. *See Camp v. State, supra.*

 Third, appellant made a motion for mistrial at the conclusion of the State's case based on the same facts set forth in his second point on appeal. A discussion of whether the trial court abused its discretion in admitting evidence of appellant's use of

crack cocaine is adequately discussed above. Because we find that the trial court did not abuse its discretion in admitting evidence of appellant's crack cocaine, we cannot say that the trial court abused its discretion in denying the motion for mistrial based on the same argument.

Fourth, appellant made a motion in limine at the close of his direct examination of attorney C.P. Christian to preclude the State from questioning Mr. Christian on cross-examination about any criminal charges pending against him. The State responded that appellant opened the door to this line of questioning when he asked Mr. Christian his *legal opinion* as to whether Ms. Merritt was a bona fide purchaser of Harvey Gene stock, and that Mr. Christian had recently turned in his law license because he was stealing money from his clients. The State further argued that this testimony went to credibility under Ark. R. Evid. 608. The abstract indicates that the trial court overruled the objection. The State then questioned Mr. Christian about the loss of his law license on cross-examination. At the end of appellant's redirect examination, appellant moved for a mistrial based on the State being allowed to question Mr. Christian regarding his law license.

■■ The State contends that appellant's motion was untimely. Motions and objections must be made at the time the objectionable matter is brought to the jury's attention, or they are otherwise waived. *Johnson v. State, supra.* In *Ashlock v. State,* 64 Ark. App. 253, 983 S.W.2d 448 (1998), this court held that a motion for a mistrial was untimely where the motion was not made until after the witness completed his testimony on cross-examination and questioned further on redirect. *Id.* That is the same situation as the present case. We find that appellant's motion was untimely, and therefore cannot be addressed on appeal.

■ Even if appellant had preserved this issue for appeal, appellant opened the door to the admission of this evidence by asking Mr. Christian his legal opinion as to whether Ms. Merritt was a bona fide purchaser of the Harvey Gene stock. Given this fact, we cannot say that the trial court abused its discretion by denying the motion for mistrial.

■ Fifth, appellant argues that the trial court abused its discretion by refusing to grant a motion for mistrial based on the

prosecutor's questioning of appellant during his cross-examination that "Mr. Witt has just seen these documents for the first time this morning. You brought these with you this morning, did you not?" The trial court denied the motion for mistrial, but instructed the jury to "disregard any statement made by Mrs. Piazza as to what Mr. Witt might have seen for the first time this morning." Appellant has not asserted any prejudice. "An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial." *Ward v. State*, 338 Ark. 619, 1 S.W.3d 1 (1999). Because appellant does not assert any prejudice and because an admonition was given by the trial court, we cannot say the trial court abused its discretion in this regard.

Sixth, appellant contends that the trial court erred in denying his motion for mistrial made after the State asked appellant whether he was fired from his employment with Harvey Gene. Although the trial court sustained the objection, the trial court did not make a ruling on the motion for mistrial, a fact which appellant noted in his brief. Therefore, we cannot address the argument on appeal. *Jackson v. State*, 334 Ark. 406, 976 S.W.2d 370 (1998).

Finally, appellant appeals the final motion for mistrial made at the close of evidence, renewing the prior motions. This argument need not be addressed because each individual motion is discussed herein.

### 5. Whether the trial court erred when it failed to give a limiting instruction after certain individuals testified concerning specific checks being used for the purpose of purchasing crack cocaine

Appellant contends that the trial court erred by refusing to give a cautionary instruction after certain individuals testified about specific checks being used to purchase crack cocaine. Appellant's counsel first requested the instruction after the testimony of Odetta Stansfield when he stated, "Judge, at this time I'm requesting the court instruct the jury limit — on a limiting instruction that the witness that just testified and any other witness that testifies in a similar fashion, that they are not to accept that testimony for truth, but to accept it only as to his credibility." The State objected that the testimony was for the truth, and the trial court asked whether

appellant's counsel was requesting a "203 instruction." AMCI 2d 203-A provides that evidence of alleged crimes or acts may not be considered to prove the character of the defendant in order to show he acted in conformity therewith, but that such evidence may be used as evidence of motive.

The court said that the instruction requested was not appropriate. Appellant's counsel then asked appellant himself to make the motion. Appellant himself stated, "Yes, your Honor. The jury should be instructed that the evidence of crack cocaine should be considered only to show credibility and not that the defendant is guilty of the crime with which he is charged, but rather to show it being a purpose, as the prosecutor alleged, when we argued these motions before the court." The court responded, "I don't feel they need to be instructed on that. I don't. I don't see that." After the testimony of Regina Staggs, the appellant again requested that the jury be instructed "as was requested before . . . [f]or the limited purpose that it is being offered for." Again, the court denied the request stating, "That is your credibility issue, though, 203. Overruled."

The State argues that appellant's argument must fail because his request did not contain the proper AMCI 2d 203 language, and that appellant must request the proper instruction and failure to do so will not preserve the issue for appeal. *See Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994). The State's reliance on *Hendrickson v. State, supra,* is misplaced because the appellant there never sought any limiting instruction, nor was it an issue whether the proper instruction was requested.

Appellant contends that the record is clear that the trial court knew appellant was requesting a 203 instruction. However, there seemed to be some confusion when the request was first made after the testimony of Odetta Stansfield. The abstract reflects that appellant was asking that the court instruct that the evidence only be showed for purpose of credibility and to show motive, not that appellant was guilty of the crime he was charged with committing. According to the abstract, appellant did not request the instruction after the testimony of each witness who testified regarding appellant's cocaine usage, but only after the testimony of Odetta Stansfield and Regina Staggs.

■■ Appellant cites *Smith v. State*, 316 Ark. 407, 872 S.W.2d 843 (1994), contending that he is entitled to a limiting instruction when testimony is admitted pursuant to Rule 404. However, in *Smith v. State, supra*, the instruction was never requested, and the supreme court did not state that the instruction to the jury had to be given after the testimony of the witness. In *Owens v. State*, 325 Ark. 110, 121, 926 S.W.2d 650, 656, (1996), the supreme court stated:

> Generally, evidence of other crimes, wrongs, or acts is not admissible merely to prove the bad character of the defendant and to show that his actions conformed to that character. However, if the evidence is relevant to the main issue of the case, in the sense of tending to prove some material point rather than to prove the defendant is a criminal, the evidence may be admissible with a proper cautionary instruction by the court. *Lindsey v. State*, 319 Ark. 132, 890 S.W.2d 584 (1994).

The instruction appellant requested was not the AMCI 2d 203 instruction, but rather an instruction that evidence of appellant's cocaine use only be used for the purpose of credibility and to show motive, not that appellant was guilty of the crime he was charged with committing. This evidence did not go to credibility. Further, the AMCI 2d 203-A was given to the jury at the close of the case. Based on these circumstances, we cannot say that the trial court abused its discretion.

### 6. Whether the trial court erred in refusing to give appellant's requested instructions

Appellant requested that instructions be given to the jury on contract, quantum meruit, accord and satisfaction, and whether appellant had a proprietary interest in the funds he was taking. The trial court refused to give these instructions. Appellant contends that the trial court should have given these instructions pursuant to Ark. Code Ann. § 5-1-111(c)-(d) (Repl. 1997), which provides in pertinent part:

> (c) The issue of the existence of a defense need not be submitted to the jury unless evidence is admitted supporting the defense. If the issue of the existence of a defense is submitted to the jury, the court shall charge that any reasonable doubt on the issue requires that the defendant be acquitted. A defense is any matter:

(1) So designated by a section of this code; or (2) So designated by a statute not a part of this code; or (3) Involving an excuse or justification peculiarly within the knowledge of the defendant on which he can fairly be required to introduce supporting evidence.

(d) The defendant must prove an "affirmative defense" by a preponderance of the evidence. An "affirmative defense" is any matter: (1) So designated by a section of this code; or (2) So designated by a statute not a part of this code.

Appellant argues that the theft statute permits the giving of the instructions requested because Ark. Code Ann. § 5-36-101(11), defining the meaning of value, provides that "[i]f the actor gave consideration for or had a legal interest in the property or service, the amount of the consideration or the value of the interest shall be deducted from the value of the property or service to determine value . . ." The only reference to value in the Ark. Code Ann. § 5-36-103 pertains to whether the crime is classified as a Class B felony, Class C felony, or a Class A misdemeanor.

 Although a non-AMCI jury instruction may be given when the trial court finds that an AMCI instruction does not accurately state the law, *see Leach v. State*, 38 Ark. App. 117, 831 S.W.2d 615 (1992), *aff'd by* 311 Ark. 485, 845 S.W.2d 111 (1993); it is not error for a trial court to refuse to give a non-AMCI instruction when another instruction covers the issue. *See Williams v. State*, 304 Ark. 279, 801 S.W.2d 296 (1990). Further, a non-AMCI instruction should only be given when the trial judge finds that the AMCI instruction does not state the law or does not contain an instruction on the subject. *See Ventress v. State*, 303 Ark. 194, 794 S.W.2d 619 (1990). Appellant has not demonstrated that he was entitled to the requested instructions on quantum meruit, contract, accord and satisfaction, and on whether appellant had a proprietary interest in the funds he was taking. The trial court gave the proper instruction on theft of property, which included the meaning of value. Therefore, we cannot say the trial court erred in refusing to give the requested instructions.

### 7. *Whether the trial court erred in refusing to quash the felony information*

Appellant argues that the trial court erred in refusing to quash the felony information because the arrest warrant was issued without an independent probable-cause determination. Appellant was arrested on May 5, 1997, based on a warrant issued by the Little Rock Municipal Court Clerk. Municipal Court Judge Lee Munson made a finding of probable cause for theft based on the affidavit of an investigator for the prosecutor's office. A probable-cause hearing was scheduled for July 17, 1997. Prior to the hearing, the prosecutor filed a felony information with the Pulaski County Circuit Clerk charging the defendant with theft by deception. The felony information was not accompanied by an affidavit or any of the documents in the municipal court's file. A felony arrest warrant was issued, and appellant was arrested.

Appellant contends that Ark. R. Crim. P. 7.1 requires independent review by a judicial officer prior to the issuance of an arrest warrant. The State, citing *Nance v. State*, 323 Ark. 583, 918 S.W.2d 114 (1996) *cert. denied*, 519 U.S. 847 (1996), *and denial of postconviction relief aff'd by* 339 Ark. 192, 4 S.W.3d 501 (1999), responds that lack of probable cause is not a statutory ground to set aside an indictment. Further, the State argues the fact of an illegal arrest would not void a conviction. *See Halfacre v. State*, 292 Ark. 329, 731 S.W.2d 182 (1987).

 This court has addressed this issue in regard to an appeal based on a denial of a motion to suppress. *See Lamb v. State*, 23 Ark. App. 115, 743 S.W.2d 399 (1988). In *Lamb*, we stated as follows:

> Arkansas Rules of Criminal Procedure 7.1(c) provides that the clerk of a court or his deputy may, when so authorized by the judge of that court, issue an arrest warrant upon the filing of an information or upon an affidavit approved by the prosecuting attorney. However, the authority vested in court clerks under this rule does not dispense with the requirement that warrants must be issued by a detached, neutral magistrate who makes an independent determination of probable cause. *Davis v. State*, 293 Ark. 472, 739 S.W.2d 150 (1987). Here, the warrant was issued without either the approval of a judicial officer or an independent determination of probable cause, and we hold that the warrant requirements were not met.

*Id.* at 118-19, 743 S.W.2d at 401. As in *Lamb*, the warrant issued by the circuit clerk based on the felony information was issued without

the approval of a judicial officer or an independent probable-cause determination. The present case, however, does not involve the admission of evidence seized pursuant to the warrant. Even if the warrant was invalid, the arrest itself is valid as it was supported by probable cause. *Davis v. State*, 293 Ark. 472, 739 S.W.2d 150 (1987). There was evidence of probable cause for arrest as evidenced by the affidavit in support of the arrest warrant sought in municipal court. The failure to meet the warrant requirements of Ark. R. Crim. P. 7.1 does not require reversal in the present case.

### 8. Whether this case should be reversed based upon cumulative error

Appellant contends that the trial court erred when it overruled appellant's motion for a new trial. Appellant first raised this argument below in a motion for new trial filed after the sentencing hearing. The trial court denied the motion. Appellant filed a second motion for new trial, incorporating all the arguments from the first motion for new trial, which the trial court denied. We need not address appellant's argument as this court does not recognize the doctrine of cumulative error where there are no errors to accumulate. *Harmon v. State,* 340 Ark.18, 8 S.W.3d 472 (2000).

### 9. Whether the trial court erred by ordering appellant to make restitution to the victim

Appellant contends that the sentence imposed by the trial court requiring restitution is an illegal sentence because the court failed to give appellant a credit for sums of money paid by appellant and his family. Appellant also argues that the court should have determined the amount of restitution by the concurrence of the victim, the defendant, and the prosecutor, pursuant to Ark. Code Ann. § 5-4-303(a)(h)(1)(a)(Supp. 1999). The State contends that appellant did not make this argument below and cannot change his argument on appeal.

During the penalty phase of trial, the jury recommended appellant serve a ten-year suspended imposition of sentence and a $10,000 fine. The trial judge then stated that before he made a decision on the recommendation, he wanted proof to be submitted as to the value of the Harvey Gene stock and proof that there has

been a transfer of the stock to Ms. Merritt that amounts to $60,000 or that the stock certificates were ready for transfer. A sentencing hearing was held on January 12, 1999, and Harvey Cobb testified regarding the value of the stock. The court then inquired whether Ms. Merritt was willing to accept the stock, and she stated that she was not.

The court then sentenced appellant to a three-year suspended imposition of sentence, a $100 SIS fee, a $500 fine and costs due on the installment plan. The court further ordered that appellant pay Ms. Merritt restitution in the amount of $60,000 plus interest. Appellant's attorney then objected that the sentence was not proper pursuant to Ark. Code Ann. § 5-1-103 (Repl. 1997). However, this section has nothing to do with sentencing, and appellant's counsel contends he stated Ark. Code Ann. § 5-4-103 and that Ark. Code Ann. § 5-1-103 was improperly recorded by the court reporter. Although the State contends this issue was not preserved for appeal, appellant himself then asked the court whether or not he was entitled to any credit for the money paid, the $10,000 in cash, the $2,800 in cash, the $2,500 paid in September 1995, and any equity in the house. The court did not change the amount of restitution based on appellant's question.

■■ Arkansas Code Annotated section 5-4-205 (Repl. 1997) governs restitution and provides in part:

> (a)(1) A defendant who is found guilty or who enters a plea of guilty or nolo contendere may be ordered to pay restitution.
>
> (2) The sentencing authority, whether the trial court or a jury, shall make a determination of actual economic loss caused to a victim by the crime.
>
> (3)(A) The determination of the amount of loss is a factual question to be decided by the preponderance of the evidence presented to the sentencing authority during the sentencing phase of a trial.

Evidence with regard to Ms. Merritt's loss was not presented at the sentencing hearing, but rather during the course of trial. The amounts of money paid by members of appellant's family on his behalf to Ms. Merritt must be considered in determining Ms. Merritt's actual economic loss pursuant to the statute. Therefore, we remand for the trial court to make a determination as to the

amount of money paid by appellant or his family members on his behalf to Ms. Merritt and to apply such amount as a credit to the $60,000 restitution award.

Affirmed in part; remanded in part.

STROUD and GRIFFEN, JJ., agree.