Lance Whitley BROCK *v.* STATE of Arkansas

CA CR 04-810                                           204 S.W.3d 562

Court of Appeals of Arkansas
Opinion delivered March 2, 2005

[Rehearing denied April 6, 2005.]

*John Biscoe Bingham*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Lance W. Brock was convicted in a bench trial of two counts of second-degree domestic battery and one count of third-degree domestic battery, which were allegedly committed against Miriam Fitch. He was sentenced to concurrent seven-year prison terms for the felony second-degree domestic battery convictions, and one year in the Pulaski County Jail for the misdemeanor third-degree battery conviction. Mr. Brock now appeals, arguing that his sentences for his felony convictions were illegal. He also argues that there was insufficient evidence to support any of his convictions because the State failed to prove that the victim was "a family or household member" as required by the domestic battery statutes. We affirm.

We will address Mr. Brock's sufficiency argument first. When a challenge is made to the sufficiency of the evidence, we affirm the conviction if it is supported by substantial evidence. *Donovan v. State*, 71 Ark. App. 226, 32 S.W.3d 1 (2000). Substantial evidence is evidence that is forceful enough to compel reasonable minds to reach a conclusion one way or another. *Wilson v. State*, 332 Ark. 7, 962 S.W.2d 805 (1998). We view the evidence in the light most favorable to the State, considering only the evidence supporting the verdict. *Donovan v. State, supra*. We do not weigh the evidence presented at trial or assess the credibility of witnesses, as these are matters for the finder of fact. *Walker v. State*, 330 Ark. 652, 955 S.W.2d 905 (1997).

The two second-degree battery offenses were alleged to have occurred in August 2003, and Dr. Robert Shaw testified that Ms. Fitch was admitted to Baptist Hospital in North Little Rock on two separate occasions that month. Dr. Shaw observed Ms. Fitch on August 7th, when she was diagnosed with rib fractures and a collapsed lung. Ms. Fitch remained in the hospital for four or five days, and returned for emergency treatment on August 17th. On that occasion she was in shock and had a large amount of blood in the right side of her chest. She developed a severe case of pneumonia and was treated in the intensive care unit, where she

remained on a ventilator for seven to ten days. Dr. Shaw testified that Ms. Fitch's prognosis was "very grim" when she was on the ventilator, but that "she fortunately rallied and was able to survive."

Ms. Fitch testified that she met Mr. Brock when they were living in the same apartment complex. She moved to a house in North Little Rock and maintained that they lived together from March through May 2003, but were not living together when the batteries occurred in August 2003.

Ms. Fitch stated that on August 7, 2003, Mr. Brock came to her house and they were arguing about other reports she had previously filed against him. According to Ms. Fitch, he became angry and started shoving and hitting her. When she tried to dial 911 for help, Mr. Brock took the phone from her and threw it. Ms. Fitch asked him to leave several times, but Mr. Brock refused and proceeded to throw her to the floor and beat her. Ms. Fitch stated that the beatings were very painful and caused severe breathing problems. Mr. Brock eventually fell asleep in Ms. Fitch's house, at which time she was able to leave and seek treatment for her injuries at the hospital.

Ms. Fitch also gave testimony about the battery that resulted in her August 17, 2003, hospitalization. She stated that she came home and found Mr. Brock in her house. She asked why he was there, and he stated that a friend of his was going to spray for bugs. After that happened, Mr. Brock threw her on the floor and beat her in a similar manner as before. Ms. Fitch stated "it was almost like he was trying to re-injure me on the same places because that was the area he went after," and that she told him, "I am already hurt, leave me alone." At some point Mr. Brock left the house, and Ms. Fitch called for an ambulance when she awoke the next morning.

The misdemeanor battery allegedly occurred on June 19, 2003, and Ms. Fitch testified that Mr. Brock was living with her in June 2003. She stated that on the date of the alleged offense they were arguing and that Mr. Brock threw a coffee cup and hit her in the chest, causing a bruise. Ms. Fitch also indicated that he caused an injury to her face and one of her fingers during the assault.

Mr. Brock testified in his defense and indicated that he developed a friendship with Ms. Fitch in the summer of 2000. During this time, Ms. Fitch was still married, but she was having problems with her marriage and she no longer lived with her

husband. Mr. Brock indicated that he would often spend the night with Ms. Fitch at either his residence or her residence. Mr. Brock admitted that he was living at Ms. Fitch's house on June 19, 2003, and that he had been staying with her for four weeks prior to the alleged incident of August 7, 2003. However, Mr. Brock denied ever hitting Ms. Fitch or causing her any injury. He described Ms. Fitch as very unstable and combative, and indicated that she would often become very violent and physically attack him. Mr. Brock stated that "it was like she was wanting me to hit her back and when I didn't, she only seemed to get madder."

Mr. Brock challenges the sufficiency of the evidence to support his convictions on the basis that there was not substantial evidence that Ms. Fitch fit the definition of a "family or household member." A person commits second-degree domestic battery if, with the purpose of causing physical injury to a family or household member, he or she causes serious physical injury to a family or household member. Ark. Code Ann. § 5-26-304(a)(1) (Supp. 2003). A person commits third-degree domestic battery if, with the purpose of causing physical injury to a family or household member, he causes physical injury to a family or household member. Ark. Code Ann. § 5-26-305(a)(1) (Supp. 2003). The definition of "family or household member" includes "[p]ersons who presently or in the past have resided or cohabitated together." Ark. Code Ann. § 5-26-302(6) (Supp. 2003). Mr. Brock argues that because the State failed to establish that he cohabitated or resided with Ms. Fitch, all of his domestic battery convictions must be reversed. Mr. Brock notes that Ms. Fitch was still married and asserts that it is absurd to believe that he could cohabitate or reside with someone who was still married.

█ We need not address Mr. Brock's challenge to the sufficiency of the evidence because it is not preserved for our review. Arkansas Rule of Criminal Procedure 33.1 provides, in pertinent part:

> (b) In a nonjury trial, if a motion for dismissal is to be made, it shall be made at the close of all of the evidence. The motion for dismissal shall state the specific grounds therefor. If the defendant moved for dismissal at the conclusion of the prosecution's evidence, then the motion must be renewed at the close of all of the evidence.

> (c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a)

and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment.

At the conclusion of the State's case, Mr. Brock made a motion to dismiss challenging whether or not the State proved that he caused any physical injuries, but he made no challenge to the State's proof on the issue of whether he was a member of the victim's household. At the conclusion of the evidence, Mr. Brock failed to make a motion to dismiss but rather proceeded to his closing argument, and even in his closing argument he made no challenge to the State's proof on the element of the charges that he now asserts was missing. Because Mr. Brock failed to apprise the trial court of the sufficiency argument now being raised on appeal in a timely motion to dismiss, this argument has been waived.

We note, however, that even if Mr. Brock's sufficiency argument were preserved, it is nonetheless meritless. From the plain language of Ark. Code Ann. § 5-26-302(6) (Supp. 2003), the definition of a family or household member extends to those persons who have cohabitated together in the past. Thus, it is irrelevant whether or not Mr. Brock cohabitated with Ms. Fitch at the time of the offenses as there was proof that they lived together for a period of about three months before the first offense was committed. The fact that Ms. Fitch remained married during this cohabitation is irrelevant.

Mr. Brock's remaining argument is that he was given illegal sentences for the two felony convictions. The trial court sentenced Mr. Brock in accordance with Ark. Code Ann. § 16-90-803 (Supp. 2003), which provides in pertinent part:

> (a)(1)(A) When a person charged with a felony enters a plea of guilty or no contest, enters a negotiated plea, or is found guilty in a trial before the judge, or when the trial judge is authorized to fix punishment following an adjudication of guilt by a jury pursuant to § 5-4-103, sentencing shall follow the procedures provided in this chapter.
>
> . . . .
>
> (2)(A) The presumptive sentence shall be determined, but may be departed from pursuant to the procedures outlined in § 16-90-804.
>
> . . . .

(3) The presumptive sentence for any offender of a felony committed on or after January 1, 1994, is determined by locating the appropriate cell of the sentencing standards grid.

During the sentencing phase of the trial, Mr. Brock correctly noted that the presumptive sentence for his felonies as reflected by the sentencing standards grid was "regional punishment facility/alternative sentencing," and Mr. Brock asked the trial court to adhere to the presumptive sentence. However, the trial court departed from the presumptive sentence, as it was authorized to do under Ark. Code Ann. § 16-90-804 (Supp. 2003), pursuant to its written finding referencing the severity of the victim's injuries. Mr. Brock argues that the sentencing procedure implemented by the trial court violated the Sixth Amendment, and thus that his seven-year prison terms must be reversed.

■ In support of his argument, Mr. Brock cites *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In that case the petitioner pleaded guilty to kidnapping and the facts admitted in his plea, standing alone, supported a maximum sentence of 53 months. However, the trial court imposed a 90-month sentence after finding that the petitioner had acted with deliberate cruelty, a statutorily enumerated ground for departing from the standard range. The Washington Supreme Court affirmed, rejecting the petitioner's argument that the sentencing procedure deprived him of his federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence. The United States Supreme Court reversed, holding that because the facts supporting the petitioner's exceptional sentence were neither admitted by him nor found by a jury, the sentence violated his Sixth Amendment right to trial by jury. In reaching its conclusion, the Supreme Court applied the rule it expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Citing *Ring v. Arizona*, 536 U.S. 584 (2002), and *Harris v. United States*, 536 U.S. 545 (2002), the Supreme Court stated, "Our precedents make it clear, however, that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or*

*admitted by the defendant.*" *Blakely v. Washington*, 542 U.S. at 303 (emphasis in *Blakely*).

In the case at bar, Mr. Brock submits that the precedent in *Blakely v. Washington, supra*, requires reversal of his sentence. He contends that the trial court's upward departure from the presumptive sentence was unconstitutional because the additional finding of the trial court constituted a violation of the Sixth Amendment.

■■ Without deciding the constitutionality of our sentencing procedures, we hold that appellant's argument fails due to the following waiver executed by Mr. Brock prior to trial:

> I understand that I have a right to a jury trial where no verdict would be accepted unless all twelve jurors agreed. If the jury found me to be guilty of anything, I would have the right to have the jury to set my punishment.

> I waive my right to have a jury trial. I ask that the judge hear and weigh the evidence and, after applying the law, make a decision if I am guilty of anything. If the judge finds me guilty, the judge sets my punishment.

The Supreme Court in *Blakely v. Washington, supra*, explained:

> JUSTICE BREYER [in his dissent] argues that *Apprendi* works to the detriment of criminal defendants who plead guilty by depriving them of the opportunity to argue sentencing factors to a judge. *Post*, at 4-5. But nothing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. See *Apprendi*, 530 U.S., at 488; *Duncan v. Louisiana*, 391 U.S. 145, 158 (1968). If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. Even a defendant who stands trial may consent to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial. We do not understand how *Apprendi* can possibly work to the detriment of those who are free, if they think its costs outweigh its benefits, to render it inapplicable.

*Id.* at 310. Thus, the *Blakely* court made it clear that a defendant may waive his constitutional rights and consent to judicial factfinding as to

sentence enhancements. In the present case, Mr. Brock waived his right to a jury trial and expressly consented to be sentenced by the trial court.

In his reply brief, Mr. Brock correctly asserts that the waiver form he signed erroneously represented a sentencing range of zero to six years, when the range for his Class C felonies was actually three to ten years. Mr. Brock then argues:

> Nothing in that Approved Motion to Waive Jury Trial and Accep-
> tance put the defendant upon notice that the trial court could go
> well beyond the sentencing statutes which were in existence and
> sentence the defendant to more than the six years set forth in the
> waiver, let alone waive the applicability of the sentencing statutes.
> There is nothing in that waiver which notifies the defendant that
> the trial court, under Arkansas law as it existed at that time, could
> totally ignore the sentencing statutes and impose any sentence the
> court desired during the sentencing phase of the proceedings.

Contrary to Mr. Brock's argument, the trial court did not "totally ignore the sentencing statutes and impose any sentence the court desired." It cannot be disputed that at the time the felonies were committed, second-degree domestic battery was a Class C felony, *see* Ark. Code Ann. § 5-26-304(b)(1) (Supp. 2003), and the sentencing range for a Class C felony is three to ten years. Ark. Code Ann. § 5-4-401(a)(4) (Repl. 1997). The trial court sentenced Mr. Brock to seven years in prison, which was well within the sentencing range. Moreover, the trial court abided by the dictates of Ark. Code Ann. § 16-90-803 (Supp. 2003), and appellant makes no argument to the contrary.

We recognize that the waiver of a jury trial is a constitutional fundamental right and that it must be a knowing, intelligent, and voluntary waiver. *See McCoy v. State*, 60 Ark. App. 306, 962 S.W.2d 822 (1998). However, while Mr. Brock refer-ences the sentencing-range discrepancy contained in the waiver in his reply brief, he does not argue that the discrepancy tainted the waiver and rendered it invalid.[1] Rather, he expressly agrees in his reply brief that, "The State also argues that the defendant waived

---

[1] We note that Ark. R. Crim. P. 31.2 provides that a defendant may waive his right to trial by jury personally in writing or in open court, but contains no provision that the waiver be accompanied by the possible sentencing range if found guilty by the trial court.

his jury trial, which he did[.]" Mr. Brock does not request reversal so that he may be tried or sentenced by a jury, but rather asserts in the conclusion of his brief, "Mr. Brock should not have been sentenced to more than a regional punishment facility or alternative sentencing as provided by the sentencing grid which forms a part of Arkansas' presumptive sentencing statutes." This assertion is incorrect for the reasons previously outlined in our opinion.

Affirmed.

GRIFFEN and ROAF, JJ., agree.