SLIP OPINION

Cite as 2014 Ark. 110

# SUPREME COURT OF ARKANSAS

No. CR–13–371

| | |
|---|---|
| JOHNATHAN JOHNSTON<br><div align="right">APPELLANT</div> | **Opinion Delivered** March 13, 2014 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION [NO. CR–2011–3866] |
| STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | HONORABLE HERBERT WRIGHT, JR., JUDGE |
| | <u>AFFIRMED</u>. |

**CLIFF HOOFMAN, Associate Justice**

Appellant Johnathan Johnston appeals from his convictions for three counts of rape of his daughter. He was sentenced to forty years' imprisonment on each count, with all sentences to be served concurrently. On appeal, Johnston argues that the circuit court erred (1) in permitting the State to introduce pornographic images from his computer without sufficient evidence that he viewed the pornography; (2) in admitting the pornographic images under Ark. R. Evid. 404(b) (2013); and (3) in admitting the pornographic images under Ark. R. Evid. 403 (2013). We assumed jurisdiction of this case pursuant to Ark. Sup. Ct. R. 1–2(b)(4), (5), and (6) (2013), as it involves a significant issue needing clarification or development of the law. We affirm.

On November 4, 2011, Johnston was charged with three counts of rape of his then nine-year-old daughter, C.J. The rapes were alleged to have occurred between December 21,

2006, and September 5, 2011. At trial, C.J. testified that Johnston had been raping her since she was four or five years old during her weekly visitation with her father, which was established following her parents' divorce. She stated that the rapes occurred several times during each weekend visit and that Johnston raped her vaginally, orally, and anally. C.J. testified that Johnston had occasionally used a condom but that he typically ejaculated on her, and she described the smell of his semen. She further testified that Johnston had filmed her "sucking on his penis" and that he had taken photographs of her in suggestive poses. C.J. stated that the rapes were painful and that Johnston would anally rape her when he was "really mad" because he knew that hurt her the most.

According to C.J., she did not tell anyone about the abuse because her father threatened that "demons would kill me and him." C.J. stated that Johnston would tell her that he saw demons or vampires in the mirror and try to scare her. She testified that she finally decided to tell her grandmother about the abuse after a visit with her father over Labor Day weekend in 2011, when she asked him when he would stop raping her, and he replied that he did not know. C.J. stated that he made a "pinkie promise" to stop but that he then raped her again on that Monday. While Johnston would normally make C.J. change her clothes and shower after the rapes, she decided not to change her underwear before she went home that weekend because she had a feeling that she was going to disclose the rapes. C.J. told her grandmother after school on Tuesday, and she was taken to Arkansas Children's Hospital, where she underwent a sexual-assault exam. A swab taken from C.J.'s vagina tested positive for sperm cells, although the cells were unable to be DNA typed. The underwear that

C.J. had worn home that weekend was also examined, and Johnston's semen was found in the crotch area. His semen was also found on four other pairs of C.J.'s underwear seized from Johnston's home. A forensic sexual-assault examination conducted two weeks later revealed that C.J. had a major tear in her hymen that indicated sexual abuse involving penetrating trauma.

Following the evidence presented at trial, the jury convicted Johnston of all three counts of rape and sentenced him to forty years' imprisonment on each count, with the sentences to be served concurrently. The judgment and commitment order was entered on February 7, 2013, and Johnston filed a timely notice of appeal.

Johnston's sole argument on appeal concerns the circuit court's admission of pornographic images found on his laptop computer. At a pretrial hearing on this issue, Investigator Chris Cone, with the Arkansas Internet Crimes Against Children Task Force, testified that he had performed a forensic search of Johnston's computer and that the pornographic images were found in the temporary Internet files of Johnston's computer under the username "Johnathan." All of the approximately 2200 images had been downloaded in a nineteen-minute time span on June 2, 2011, and Cone prepared a report containing about 188 of these images. Cone indicated that the vast majority of the pornographic images were incest related, with filenames and website names watermarked on them such as "wholefamilyincest," "dadspermindaughters," "homeincestvideos," "daughterdestruction.com," "tryincest.com," and "incestsexcite.net." Cone stated that the images did not necessarily feature underage females, although many of the actors were dressed

or posed in such a manner as to appear young. Cone testified that, because the Internet search history had been deleted on the computer, he did not have any proof that these websites had actually been visited. He indicated that many of the images on a webpage download automatically when the visitor enters a website and that some of the images in his report appeared to be from "banner ads," which the user does not even have to click on for the image to automatically download.

Johnston argued that the report prepared by Cone should not be admitted into evidence because the images were not relevant to the issue of whether he raped his daughter, because they were also inadmissible under Ark. R. Evid. 404(b), and because the probative value of the images was outweighed by their prejudicial effect under Ark. R. Evid. 403. The circuit court ruled that two of the images believed to be banner ads would be excluded but that the other images were admissible pursuant to Rule 404(b). Johnston filed a motion for reconsideration, which was denied by the circuit court, and the court granted Johnston's standing objection to the admission of this evidence at trial. Cone's testimony at trial was similar to that at the pretrial evidentiary hearing, although the State admitted into evidence only thirty-seven images, less than half the images that it had initially relied on at the pretrial hearing.

Circuit courts have broad discretion in deciding evidentiary issues, and their rulings on the admissibility of evidence are not reversed on appeal absent an abuse of discretion. *Laswell v. State*, 2012 Ark. 201, 404 S.W.3d 818. Under Ark. R. Evid. 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show

4

that he acted in conformity therewith; however, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Thus, evidence admitted under Rule 404(b) must be independently relevant to a material issue in the case. *Cook v. State*, 345 Ark. 264, 45 S.W.3d 820 (2001). For evidence to be independently relevant, the evidence must have a tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. Ark. R. Evid. 401 (2013). Even relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403.

Johnston challenges the circuit court's ruling admitting the pornographic images on several grounds. He first contends that the images were inadmissible because there was no proof that he had viewed the pornography, pointing to Cone's testimony that all the images had been downloaded within a nineteen-minute interval and that there was no proof that anyone, including Johnston, had actually visited the websites. Johnston also argues that the circuit court abused its discretion in ruling that the images were admissible under Ark. R. Evid. 404(b). He asserts that the pornographic images were admitted purely as propensity evidence, introduced to show that he had a propensity for incestuous acts and that he acted in conformity with this propensity when he raped his daughter. As set forth above, Rule 404(b) prohibits such propensity evidence unless it is independently relevant to an issue in the case, such as to show the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ark. R. Evid. 404(b). Johnston

5

contends that the issue of whether pornography is admissible in a rape or sexual-abuse trial under Rule 404(b) has not yet been addressed by our appellate courts and instead cites cases from other jurisdictions, claiming that these cases have unanimously held that the admission of such evidence is error absent a showing that the pornographic materials were shown to or used to seduce the victim. Finally, in Johnston's third argument, he contends that, even if the circuit court properly admitted the evidence in question, it erred by concluding that the probative value of the evidence outweighed its prejudicial effect under Ark. R. Evid. 403.

The State responds that there was sufficient circumstantial evidence presented to show that the pornography found in the temporary Internet files of Johnston's computer belonged to him, given that he was the only resident of the house and that the images were all found under his username on his computer. With regard to Johnston's argument that the images were downloaded to his computer within such a short time frame that it would not have been possible for him to view them, the State contends that this argument goes to the weight of the evidence, not to its admissibility, and also notes that Johnston could have been saving the images for later viewing.

The State also asserts that the incestuous images are admissible under Rule 404(b) to show Johnston's motive and intent in raping his daughter. As support for its argument, the State cites to *Snell v. State*, 290 Ark. 503, 721 S.W.2d 629 (1986), in which we upheld the admission of evidence of the defendant's sympathies for a white-power organization as evidence of his motive to commit felony murder in the course of a robbery that was carried out to obtain money for the organization, and to *Donovan v. State*, 71 Ark. App. 226, 32

S.W.3d 1 (2000), in which the court of appeals affirmed the admission of Rule 404(b) evidence of the defendant's drug addiction as proof of motive to steal the victim's money in order to purchase more narcotics. The State contends that both of these cases demonstrate that the Rule 404(b) evidence was independently relevant because it tended to prove that the defendant had a particular attribute that explained his motive for committing the crime. With respect to Johnston's argument that the probative value of the images is outweighed by their prejudicial effect, the State notes that there was testimony by C.J. that Johnston took photographs and video of her engaged in sexual acts with him and asserts that this renders the pornographic images in this case more probative than prejudicial under Rule 403.

Finally, even if this court finds that the pornographic images were erroneously admitted under either Rule 404(b) or Rule 403, the State contends that any error was harmless under the facts in this case. We agree with the State that the harmless–error doctrine applies in this case. Even when a circuit court errs in admitting evidence, we may declare the error harmless and affirm if the evidence of guilt is overwhelming and the error is slight. *Kelley v. State*, 2009 Ark. 389, 327 S.W.3d 373. In determining whether the error is slight, we look to see if the defendant is prejudiced. *Id.*

Even assuming that the admission of the photos was error, there was overwhelming evidence of Johnston's guilt. In addition to C.J.'s detailed testimony recounting the many years of rapes by her father, there was also corroborating medical and forensic testimony. Johnston's semen was found on the crotch area of five pairs of C.J.'s underwear, including the pair that she had worn home following her Labor Day visitation, during which, she testified,

SLIP OPINION

Johnston had raped her three times. Further, a vaginal swab from the sexual–assault exam performed the next day tested positive for sperm cells, and a major tear in C.J.'s hymen, which was consistent with sexual abuse involving penetration, was also found. Thus, there was overwhelming evidence of Johnston's guilt in this case. *See, e.g.*, *Spencer v. State*, 348 Ark. 230, 72 S.W.3d 461 (2002) (holding that, even if the testimony of a prior rape victim was erroneously admitted by the trial court, it was harmless error where there was also physical evidence that corroborated the victim's testimony). In addition, given the lengthy and detailed testimony of C.J. regarding the years of abuse by her father, we find that any error in admitting the pornographic images in this case was slight. While Johnston argues that the incest–related website names and commentary contained on many of the images were prejudicial and would have invoked "disgust, repulsion, and even anger" by the jury, any prejudice resulting from these images pales in comparison to all the evidence presented regarding his repeated rapes of his daughter. As Johnston admits, there is no allegation in this case that the images themselves involved child pornography. We therefore hold that any error in the admission of these images by the circuit court was harmless, and we affirm Johnston's convictions.

Affirmed.

HANNAH, C.J., dissents.

**JIM HANNAH, Chief Justice, dissenting.** I respectfully dissent. The majority, without analysis, sweeps aside the rules of evidence and centuries of the common law as it imposes its own decision on appellant's guilt. The rules of evidence "shall be construed to

8

secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence, to the end that the truth may be ascertained and proceedings justly determined." Ark. R. Evid. 102. Only relevant, competent evidence shall be admitted to ensure that a criminal receives a fair trial. The majority holds that it does not matter whether incompetent or irrelevant evidence is introduced at trial because if the evidence of guilt is overwhelming, the conviction will be affirmed. So much for the fundamental rights to a fair trial and to a jury trial by one's peers.

Evidence of a criminal defendant's propensity to commit a crime is excluded by Arkansas Rule of Evidence 404(b). Rule 404(b) codifies the common-law rule that evidence of similar crimes or acts is not admissible unless independent of revealing another similar crime or act it is relevant to prove commission of the charged crime. In such a case, it is independently relevant on a material point. Evidence of repugnant, deviant pornography found on appellant's computer does not constitute evidence that appellant committed rape. Rule 404(b) provides examples of when evidence of similar crimes or wrongs "may" be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or intent." None of these matters are at issue in this case because what had to be proved was the act of rape, regardless of whether the offender had the propensity to commit rape.

When the circuit court erroneously admitted into evidence the repugnant, deviant pornographic pictures and titles that were found on appellant's computer, this case was over. The prejudicial harm was immense. Because the evidence found on appellant's computer did

not constitute evidence that he raped his daughter, its probative value, at best, marginal. The circuit court abused its discretion admitting the evidence.

This court will not reverse the circuit court simply to show that the circuit court erred. *See Wells v. State*, 2013 Ark. 389, at 8, ___ S.W.3d ___, ___ (stating that this court does not reverse for harmless error). However, this case is an entirely different matter. The majority's decision is based on the premise that even without the inadmissible evidence, there was more than sufficient evidence, typically characterized as "overwhelming," to sustain the jury's verdict and to show guilt. Can there be any doubt that this inadmissable evidence affected the jury's decision on its sentence recommendation? The majority gravely undermines the right to a presumption of innocence, the right to a fair trial, and the right to a jury trial by one's peers.

For the foregoing reasons, I respectfully dissent. This case should be reversed and remanded.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.