HECHT, Justice
(dissenting).
Although I join the dissent of Justice Wiggins because I am not persuaded Put-man’s possession of the pornographic materials constituted an “act” under Iowa Rule of Evidence 5.404(6), I write separately because I conclude the evidence should have been excluded for another reason. Even assuming only for the sake of analysis that the evidence was offered for the legitimate purpose of proving identity, I believe it should have been excluded because the danger of unfair prejudice attending its admission substantially outweighed its probative value.
The factors we consider in assessing the probative force of evidence in relationship to the resulting danger of unfair prejudice are:
the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.
State v. Taylor, 689 N.W.2d 116, 124 (Iowa 2004). I will address each of these factors in turn.
I. The State’s Need for the Evidence.
The victim in this tragic case was an infant who could not testify and identify the person who brutally injured her. Yet, I do not believe this fact weighs strongly in favor of admission of the challenged evidence. There was substantial evidence other than the pornography tending to link Putman to the crime. For example, there was evidence supporting a finding that Putman was the only adult who slept upstairs on the same level of the house where *21 L.R. slept on the night of the sexual assault. The State also offered evidence that Putman had twice behaved in a sexually aggressive manner toward L.R.’s mother earlier in the evening before the crime occurred. More importantly, L.R.’s father testified that Putman had blood on his hands and shirt in temporal proximity to the time when blood was observed on L.R.’s body and the crime was discovered. Other evidence offered by the State tended to prove that when L.R. saw Putman after the crime was committed, she cowered from him. These pieces of evidence suggest the State proffered other substantial evidence of Putman’s guilt, and thus the prosecution’s need of the pornographic evidence was not extraordinarily strong.
It should be noted that even when the State’s need for the evidence is great, “the need for the evidence does not make the evidence more likely to prove that which it is offered to prove.” United States v. Stout, 509 F.3d 796, 800 (6th Cir.2007). My analysis of the probative value of the pornographic evidence is found below.
II. Clarity of Proof the Defendant Committed the Prior Bad Acts.
The State presented clear evidence that Putman’s computer and related devices held a substantial quantity of pornographic images including two titles involving rape of infants. For the reasons stated in the dissent of Justice Wiggins, I am not persuaded Putman’s possession of pornography is an “act” within the meaning of rule 5.404(6). Accordingly, I shall not further address this factor here.
III. The Strength or Weakness of the Evidence on the Relevant Issue.
Although Putman’s possession of pornography including two titles involving rape of infants might suggest some positive correlation between Putman’s interest in a specific genre of pornography and the peculiar facts of the crime, social science literature suggests the correlation might be weak at best. See Melissa Hamilton, The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric?, 22 Stan. L. & Pol’y Rev. 545, 579-80 (2011) (“Social science studies considering the correlation between viewing child pornography and contact sexual offenses against children are not consistent, though there is much evidence that only a subset of offenders who use child pornography also sexually offend against children. To support this, researchers conducting comprehensive reviews of empirical literature often conclude there is little evidence of any direct impact of viewing child pornography on the commission of contact sexual offenses.... In general, the literature supports the view that while child molesters may possess child pornography, those that possess child pornography are generally not likely to engage in contact offenses against children. Instead, child molesters are merely a small subset of child pornographers.”). Given the available social science, I cannot conclude the evidence of Putman’s possession of child pornography is strong evidence identifying him as the person who raped L.R.
IV.Degree to Which Jurors Will Be Motivated to Decide on Improper Basis.
On this element of the analysis, I share the view of Chief Justice Hannah of the Arkansas Supreme Court who characterized the overwhelming prejudice occasioned by the admission of evidence that pornography was found on a defendant’s computer: “When the circuit court erroneously admitted into evidence the repugnant deviant pornographic pictures and titles that were found on the appellant’s computer, this case was over.” Johnston v. State, No. CR-13-371, 2014 WL 1096142, 431 S.W.3d 895, - (2014) (Han *22 nah, C.J., dissenting). It is beyond dispute in my view that when the jury heard evidence that Putman’s computer held extraordinarily repugnant images of infants being raped, Putman’s conviction was guaranteed. The subject matter of this evidence was so repugnant and exquisitely prejudicial that the jurors were almost certainly highly motivated to convict Putman on that propensity evidence alone. Cf. State v. Wright, 203 N.W.2d 247, 251 (Iowa 1972) (noting risk of inflammatory and corrosive other-crimes evidence is its tendency to “stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial” (citation omitted) (internal quotation marks omitted)); see also United States v. LeCompte, 131 F.3d 767, 770 (8th Cir.1997) (stating “the danger of unfair prejudice ... presented by the ‘unique stigma’ of child sexual abuse ... is one that all propensity evidence in such trials presents”). As Chief Justice Hannah aptly suggested, when that evidence was admitted, Put-man’s trial was over.
In my view, this case presents a classic example of the type of evidence rule 5.404(6) is intended to exclude in furtherance of a fair trial. Even if it is assumed for the sake of analysis that the evidence was probative of identity — and not merely of propensity — it should have been excluded because it was so uniquely and extraordinarily prejudicial as to deny Putman a fair trial on the crime charged in this case. Cf. United States v. Fawbush, 634 F.3d 420, 423 (8th Cir.2011) (“Had the testimony been relevant to a material issue, we believe it still should not have been admitted. Under our standard, relevant other act evidence is admissible only if its probative value outweighs its potential for unfair prejudice. ‘ “Unfair prejudice” ... means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.’ We believe the evidence that Fawbush had sexually abused his daughters and had fathered a child with one of them to have been so inflammatory on its face as to divert the jury’s attention from the material issues in the trial. Consequently, the prejudicial effect of this evidence outweighed any legitimate probative value it may have had.” (Citations omitted.)). Accordingly, I conclude the district court abused its discretion in admitting the evidence, and I would reverse and remand for a new trial. I therefore respectfully dissent.