SLIP OPINION     Cite as 2017 Ark. App. 647

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-17-96

| | |
|---|---|
| AARON MICHAEL CUTSINGER<br>APPELLANT | **Opinion Delivered** November 29, 2017<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT [NO. 66CR-15-164] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE JAMES O. COX, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Aaron Cutsinger was convicted of one count of first-degree murder, one count of attempted first-degree murder, and one count of committing the offense of first-degree murder in the presence of a child. On appeal, he does not challenge the sufficiency of the evidence; instead, he argues that the circuit court erred in denying his motion in limine to exclude part of a text message. While we agree that the circuit court erred in denying Cutsinger's motion in limine, the error was harmless in light of the evidence presented at trial. We therefore affirm.

### I. *Background*

Cutsinger had a tumultuous relationship with Leanora Rippy. In September 2015, Rippy's body was discovered on the side of a mountain road in Sebastian County. She had

been run over repeatedly by a vehicle. Rippy's infant son, S.C., was also found on the side

of the road a short distance away from her body.  S.C. had multiple bruises, contusions, and

abrasions on his head and torso consistent with "road rash." Cutsinger was arrested within

days and charged with the murder of Rippy and the attempted murder of S.C.

Prior to trial, Cutsinger filed a motion in limine seeking to exclude evidence of text

messages he had sent to a friend, Scott VanHorn, in the weeks prior to Rippy's death. The

message was part of an exchange of texts between Cutsinger and VanHorn as follows:

CUTSINGER: Tell Lea to piss off and her n her kid can brin [*sic*] in hell fuck off you white piece of luring [*sic*] trash fuck u

VANHORN: I cannot tell her anything like that. And by texting me messages you violate the restraining order.[1] I can talk about anything else but I cannot do what you asked. This is for everyone's protection. Hope you understand. Here is hoping you have a wonderful evening.

CUTSINGER: Fuck the restraining order I kill them both she a living white ass bitch I'm ready to kill me some cops come on you peace [*sic*] of shit fuck your n [S.C.] hope you both die

Come at me she done fuck up

You all have God can't even save you!!!

Specifically, Cutsinger's motion in limine sought to preclude the State from introducing the

last message from him in which he said he was "ready to kill me some cops." He asserted that

the message had no independent relevance because he was "not on trial for any offense

committed against the police."  He further argued that any relevance this statement might

---

[1]It was unclear from the evidence presented at trial whether Rippy had obtained an order of protection against Cutsinger or some other order of restraint.



have was outweighed by the danger of undue prejudice, and he requested that the phrase "I'm ready to kill me some cops" be redacted.

The State responded that the entire message went to show Cutsinger's mental state at the time he sent the threats and that it was relevant because he intended to put his mental state in issue by raising it as a defense. In addition, the State cited *Scott v. State*, 2015 Ark. App. 614, 474 S.W.3d 516, in which this court found that similar language was relevant and admissible. Relying on *Scott*, the circuit court denied Cutsinger's motion and allowed the entirety of the text message to be introduced into evidence.

A Sebastian County jury convicted Cutsinger on all three offenses and sentenced him to forty years in the Arkansas Department of Correction for first-degree murder; thirty years for attempted first-degree murder, and ten years for committing the murder in the presence of a child. The sentences were run consecutively. Cutsinger filed a timely notice of appeal, and argues to this court that the circuit court erred in denying his motion in limine.

## II. *Standard of Review*

When reviewing a denial of a motion in limine, we employ an abuse-of-discretion standard. *Gutierrez v. State*, 2015 Ark. App. 516, 472 S.W.3d 147. An abuse of discretion is a high threshold; it does not simply require error in the circuit court's decision but requires that the circuit court acted improvidently, thoughtlessly, or without consideration. *Id.*

## III. *Discussion*

In his sole argument on appeal, Cutsinger argues that the circuit court abused its discretion in allowing the State to introduce his text message to VanHorn. In particular, he

argues that the statement, "I'm ready to kill me some cops," was not relevant, that it was significantly more prejudicial than probative, and that the *Scott* case on which the State and the circuit court relied is inapposite.

We begin by considering whether the statement, "I'm ready to kill me some cops," was relevant. Arkansas Rule of Evidence 402 states that "[a]ll relevant evidence is admissible, except as otherwise provided by statute or by these rules or by other rules applicable in the courts of this State. Evidence which is not relevant is not admissible." Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Ark. R. Evid. 401.

Cutsinger's defense at trial was that he did not have the requisite mental state to commit first-degree murder.[2] He argues that his statement, "I'm ready to kill me some cops," was not relevant—i.e., did not make it more or less probable—on the issue of whether he purposely killed Rippy.

We agree. Cutsinger's mental state at the time of Rippy's murder and the attempted murder of S.C. was an issue at trial. The portion of his text message in which he wrote, "Fuck the restraining order I kill them both," was clearly in reference to Rippy and S.C. This statement may have been relevant to his intent to cause harm to them. The portion of his text message stating, "I'm ready to kill me some cops," however, was not in reference to Rippy

---

[2]A person commits first-degree murder if, with a purpose of causing the death of another person, the person causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2) (Repl. 2015).

or S.C., as neither of them was a police officer. This statement was irrelevant to the issue of his mental state for the murder and attempted murder of individuals who were not police officers and therefore should not have been admitted. Because we find the statement was not relevant, we do not address Cutsinger's probative-value arguments.

Nevertheless, the State argued to the circuit court and on appeal that our decision in *Scott v. State* makes Cutsinger's statement both relevant and admissible. In that case, a police officer was permitted to testify that she had observed the defendant, Scott, in an altercation with his girlfriend at a nightclub; when the officer asked Scott to leave the club, he became visibly upset and said, "Fuck the police and her." *Scott*, 2015 Ark. App. 614, at 2, 474 S.W.3d 516, 517. The girlfriend was found dead approximately an hour later. *Id.* On appeal, Scott argued that it was error to have allowed the State to introduce the statement, "Fuck the police." This court disagreed, reasoning that the entire statement—"Fuck the police and her"—coupled with evidence that he was visibly upset at the time, was relevant to show his state of mind shortly before the murder. *Id.* at 4, 474 S.W.3d at 519.

We find *Scott* to be distinguishable. In *Scott*, the statement concerning law enforcement was made nearly contemporaneously with the act of violence against the victim and was relevant to show Scott's state of mind shortly before the murder. In the instant case, the statement concerning law enforcement was made more than two weeks before Rippy's death and was not made nearly contemporaneously with the act of violence against her. Its relevance was clearly attenuated for that reason. It would have been a simple matter for the circuit court to excise those six words, and we find error in its refusal to do so.

That does not end our analysis, however, because we must determine whether such error prejudiced Cutsinger. The appellate courts of this state have consistently held that under the harmless-error rule, when evidence of guilt is overwhelming and the error slight, we can declare the error harmless. *Johnston v. State*, 2014 Ark. 110, 431 S.W.3d 895; *Gutierrez, supra*. In determining whether the error is slight, we look to see if the defendant has been prejudiced. *Johnston, supra*. Prejudice is not presumed, however, and we will not reverse the circuit court's ruling unless the appellant demonstrates prejudice by the admission of the evidence. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000).

We conclude that the error in the circuit court's ruling was harmless. The evidence of Cutsinger's guilt in this case was overwhelming. Rippy's body was found on Observatory Road in a mountainous area of Sebastian County. The medical examiner testified that her skull had almost been crushed; she had a hinge fracture at the base of her skull; pieces of skull were embedded in her brain; and her clavicle and pelvic bones were crushed. The lack of blood in her abdominal cavity associated with these latter injuries indicated that her head had been run over first, causing near-instant death. The medical examiner explained that the nature of Rippy's injuries suggested that she had been side-swiped by a vehicle, then run over at least twice.

Police officers who secured the crime scene found a broken-off piece of chrome trim from a fender well on the side of the road; after they had developed Cutsinger as a suspect and went to his home, they observed that his truck was missing a matching portion of chrome trim from the passenger side. Analysis of a tire track found on Rippy's shirt matched the tire tread on Cutsinger's truck. DNA testing of multiple samples recovered from the underside

of Cutsinger's truck revealed the presence of Rippy's blood and bodily tissue; in addition, DNA testing of a blood swab taken from Cutsinger's shoes showed a match to Rippy.

After his arrest, Cutsinger gave a statement to police in which he initially denied seeing Rippy on the day of her murder. After telling multiple different accounts of what happened that day, including the claim that he accidentally ran over her, Cutsinger eventually admitted to police that he and Rippy had gotten into a fight; he kicked her and her baby out of the car, ran over her with his truck at least twice, and then "got scared" and threw her belongings out of the car, leaving Rippy and the baby for dead.[3] He then drove back down the mountain, washed his car, bought two sandwiches at Subway, and went home to watch a football game.

The foregoing is substantial evidence that Cutsinger killed Rippy by intentionally running over her with his truck multiple times. *See Dixon v. State*, 311 Ark. 613, 616, 846 S.W.3d 170, 172 (1993) (holding that evidence that the victim was killed by being run over more than twice by an automobile sustained conviction for first-degree murder). Because the evidence of Cutsinger's guilt was overwhelming and any prejudice caused by the introduction of the text message was slight, we therefore affirm Cutsinger's convictions.

Affirmed.

KLAPPENBACH and VAUGHT, JJ., agree.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.

---

[3] Photographs of the child were also introduced into evidence, showing the multiple contusions and abrasions on his head and torso.