**Affirmed and Opinion filed June 11, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00612-CR

---

## DANIEL BRIAN ATKINS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 263rd District Court
### Harris County, Texas
### Trial Court Cause No. 1350588

---

## O P I N I O N

In two issues, appellant Daniel Brian Atkins appeals his conviction for capital murder, complaining that the evidence was legally insufficient to establish the victim's identity and asserting that Penal Code sections 19.02(b) and 19.03 violate due process under the Fourteenth Amendment of the United States Constitution. We affirm.

## *Background*

On September 7, 2010, two officers received a call regarding the disappearance of a trailer-home resident, Franklin McCown, who had not been seen for four to five days. The officers entered the residence and found a man's body lying on the floor. The victim had been stabbed multiple times, and there were bloody footprints on the floor near his body. Atkins ultimately went to the police station and confessed to stabbing his grandfather during the course of stealing his wallet and handgun. Atkins was tried by jury and convicted of capital murder. *See* Tex. Penal Code § 19.03. The trial court sentenced him to life imprisonment without the possibility of parole.

At trial, the State introduced a stipulation of evidence, signed by Atkins, that identified McCown as the victim.[1] Atkins' counsel also agreed to the stipulation. The stipulation stated, "[T]he complaining witness in the cause on trial is named Franklin McCown, and . . . the person who is the subject of the autopsy report evidence presented in this Cause is the same complaining witness named Franklin McCown." The stipulation additionally identified State's Exhibit Number 54 (picture of McCown's driver's license) as "a photograph of the complainant, Franklin McCown" and Exhibit Number 55 as an "autopsy report of the complainant, Franklin McCown."

McCown's oldest daughter also testified at trial.[2] She identified McCown by a picture of his driver's license, which lists the address of the trailer home where the victim was found and indicates McCown was 75 at the time of his death. The daughter testified that after police found McCown, her brother called her to let

---

[1] The State wanted to avoid introducing pictures of the victim for the family to identify because the pictures were particularly gory due to the state of decomposition of the body.

[2] McCown had three daughters and one son.

her know her father had passed away. She and her middle sister made funeral arrangements for their father and attended the funeral. She said her youngest sister was Atkins' mother, which meant Atkins was McCown's grandson. She also thought her father was 74 at the time of his death.

A detective who had been at the scene of the murder also identified the victim as "Mr. McCown." She testified Atkins purportedly had gone to Tennessee for work around the time "McCown was murdered." Another officer involved with the case also testified that he was involved "in [the] investigation of the capital murder of a gentleman named Franklin McCown." The medical examiner testified he performed an autopsy on McCown. The autopsy report also identified the victim as McCown and lists the address of his residence as the home where the victim was found. The report describes McCown as a "75 year old Caucasian male . . . found dead in his residence with multiple stab wounds." This information corroborated the information on the driver's license and the daughter's testimony estimating her father was 74 when he died.

*Discussion*

In two issues, Atkins challenges the legal sufficiency of the evidence to support his conviction and the constitutionality of the Penal Code sections pursuant to which he was convicted. *See* Tex. Penal Code §§ 19.02(b), 19.03. We affirm.

## I.    Legal Sufficiency of Capital Murder Conviction

In his first issue, Atkins argues the evidence was legally insufficient to support his conviction because the State did not prove the identity of the victim.[3] When reviewing sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any

---

[3] Atkins only challenges the sufficiency of the evidence regarding the victim's identity.

3

reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see also Nava v. State*, 379 S.W.3d 396, 403 (Tex. App.—Houston [14th Dist.] 2012, pet. granted). We do not sit as thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Nava*, 379 S.W.3d at 403. Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Isassi*, 330 S.W.3d at 638; *Nava*, 379 S.W.3d at 403. This standard applies equally to both circumstantial and direct evidence. *Isassi*, 330 S.W.3d at 638; *Nava*, 379 S.W.3d at 403. Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Nava*, 379 S.W.3d at 403.

We measure evidentiary sufficiency against the "elements of the offense as defined by the hypothetically correct jury charge for the case." *Fuller v. State*, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002). That is, "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). This standard "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Id.* The hypothetically correct jury charge may include elements that must be pleaded in the charging instrument under Texas procedural

rules, such as the manner and means of an offense, but which lie outside of the Texas Penal Code and are not "substantive elements as defined by state law" for purposes of a *Jackson* review. *Adames v. State*, 353 S.W.3d 854, 861 (Tex. Crim. App. 2011). We apply the *Jackson* standard of review to the hypothetically correct jury charge. *Id*.

The State was required to prove that Atkins intentionally or knowingly caused the death of an individual while in the course of committing a burglary. Tex. Penal Code §§ 19.02(b), 19.03(a)(2). To measure evidentiary sufficiency against the elements of the offense "as defined by the hypothetically correct jury charge for the case," we must determine whether there was a material variance between the indictment and the proof presented at trial. *See Fuller*, 73 S.W.3d at 252-53. We do this by ascertaining whether Atkins was deprived of notice of the charges or could be subjected to being prosecuted later for the same offense. *See id*. at 253.

The indictment alleged that Atkins intentionally caused the death of Frank McCown by stabbing him with a knife in the course of committing and attempting to commit burglary. The State presented a stipulation at trial signed by Atkins that identified McCown as the victim. Atkins argues the stipulation was defective and thus could not prove the victim's identity because it did not comply with Texas Code of Criminal Procedure article 1.15. Tex. Code Crim. Proc. art. 1.15 (allowing defendant to waive jury trial and stipulate to evidence showing his guilt if the defendant, among other things, consents in writing "to waive the appearance, confrontation, and cross-examination of witnesses"); *see also McClain v. State*, 730 S.W.2d 739, 742 (Tex. Crim. App. 1987) ("[C]ompliance with the requirements of the statute must be strictly followed before a stipulation can be considered as evidence where the plea is before the court.") However, the State

5

correctly argues article 1.15 does not apply, as here, when the defendant pleads "not guilty" in front of a jury. *See* Tex. Code Crim. Proc. art. 1.15; *see also McClain*, 730 S.W.2d at 742 n.1 ("[S]tipulations, oral or written, in criminal cases where the plea of not guilty is entered before the jury do not have to comply with Art. 1.15.").

Atkins further contends the stipulation, by erroneously referring to the wrong defendant, did not waive Atkins' rights under the United States Constitution to confront and cross examine the witnesses to the stipulated testimony. The stipulation, in relevant part, reads: "IT IS FURTHER UNDERSTOOD BY THE UNDERSIGNED DEFENDANT, *JOE SALINAS*, that he has the absolute right to confront and cross-examine the . . . witness to this stipulated testimony. The defendant hereby states that he wishes to freely and voluntarily waive this right." (Emphasis added.) However, the stipulation referenced "the undersigned defendant" and was signed by Atkins. Atkins' name also appeared under the signature line in typeface. Moreover, stipulations entered in a criminal case tried to a jury may be oral. *See McClain*, 730 S.W.2d at 742 n.1. At trial, Atkins told the trial court he "voluntarily [and] freely" signed the stipulation, and he admitted he understood "the State [did] not have to call in a witness . . . to identify the deceased."[4] We conclude Atkins waived his rights to confront and cross-examine

---

[4] [Trial court:] And, Mr. Atkins, you understand that you're not required to sign this stipulation?

[Atkins:] Yes, sir.

[Trial court:] And you voluntarily, freely have done so?

[Atkins:] Yes, sir.

[Trial court:] So this—by doing so the State does not have to call in a witness now independent of yourself to identify the deceased, you understand that?

[Atkins:] Yes, sir.

6

the witnesses to the stipulated testimony and the stipulation constituted sufficient evidence of the victim's identity.

Even without the stipulation, the State presented ample evidence of the victim's identity. Officers discovered the victim's body in McCown's residence four to five days after McCown had been reported missing. McCown's daughter identified McCown by his driver's license, which listed the address where the victim was found as McCown's address and correctly identified McCown's age as matching the age of the victim in the autopsy report. McCown's daughter also planned and attended McCown's funeral. She testified Atkins was her sister's son, which meant Atkins was McCown's grandson. The autopsy report, which was offered and admitted into evidence without objection as redacted,[5] identified the victim as McCown and noted he died of "multiple stab wounds." Two officers and the medical examiner all identified the victim as McCown. The medical examiner testified that McCown died of "multiple stab wounds." Moreover, Atkins confessed to stabbing his grandfather, who was McCown.

There was no variance between the proof offered at trial and the indictment, alleging that Atkins caused the death of his grandfather, McCown. Accordingly, there is no indication in the record that Atkins did not know whom he was accused of murdering or that he was surprised by the proof at trial. *See Fuller*, 73 S.W.3d at 254. Further, Atkins will not be subjected to another prosecution for the same offense, as the indictment correctly named the victim who was identified at trial. *See id.* Accordingly, the evidence identifying Frank McCown as the victim is legally sufficient. We overrule Atkins' first issue.

---

[5] Atkins' counsel objected to a report of an anthropology consultation that was attached to the autopsy report. The State's counsel redacted the autopsy report to exclude that information.

## II.    Constitutionality of Penal Code Sections 19.02(b) and 19.03

In his second issue, Atkins argues the trial court erred in overruling his motion to declare Penal Code sections 19.02(b) and 19.03 unconstitutional.  He contends the current legislative scheme deprived him of due process under the Fourteenth Amendment to the United States Constitution, because section 19.02(b) shifts the burden to the defendant to prove sudden passion[6] and section 19.03 precludes a defendant in a capital murder case from asserting the sudden passion defense.  *Compare* Tex. Penal Code § 19.02(d) (allowing defendant convicted of first-degree murder to raise during the punishment phase of trial "the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause," the proof of which reduces the crime to a second-degree felony) *with Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000) (noting sudden passion is not an available defense to capital murder under revised legislative scheme (citing Tex. Penal Code § 19.03)).  He similarly complains that the legislature unconstitutionally eliminated the crime of voluntary manslaughter as a lesser-included offense of murder when it relegated sudden passion to a punishment-phase issue.

Atkins cites *Mullaney v. Wilbur* in support of his argument that shifting the burden of proof on sudden passion to the defendant violates due process.  421 U.S. 684 (1975).  In that case, Maine's murder statute defined murder as the unlawful killing of a human being "with malice aforethought."  *Id*. at 686 n.3.  Under the statute, the element of "malice aforethought" was conclusively implied if the state proved that the defendant had intentionally or knowingly committed murder.  *Id*. at 686.  Malice aforethought then could be rebutted upon proof by the defendant by a

---

[6] Under the former statute, the State had the burden of disproving sudden passion when the issue was raised.  *Green v. State*, 971 S.W.2d 639, 643 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

preponderance of the evidence that the killing was committed "in the heat of passion, on sudden provocation." *Id*. The Supreme Court held that if a state includes "malice aforethought" as an element of murder, it must prove that element beyond a reasonable doubt, not through a rebuttable presumption. *Id*. at 703-04; *see also Almendarez-Torres v. United States*, 523 U.S. 224, 240-41 (1998) ("[T]he State in *Mullaney* made the critical fact—the absence of 'heat of passion'—*not* simply a potential sentencing factor, *but also* a critical part of the definition of 'malice aforethought,' which was itself in turn 'part of' the statute's definition of 'homicide,' the crime in question.") (emphasis in original). Texas law does not require the State to prove malice aforethought as an element of murder, and thus *Mullaney* is distinguishable on that basis. *See* Tex. Penal Code § 19.02(b) (listing elements of murder offense).

We have already held that current section 19.02 of the Penal Code does not violate due process under the Fourteenth Amendment to the United States Constitution on the ground that it shifts the burden of proving sudden passion to the accused. *Green v. State*, 971 S.W.2d 639, 644 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Similarly, the Court of Criminal Appeals has held the legislature did not violate due process under the Fourteenth Amendment when it decided not to permit the sudden passion defense in the context of capital murder. *Wesbrook*, 29 S.W.3d at 113; *see also Mays v. State*, 318 S.W.3d 368, 388 (Tex. Crim. App. 2010) (acknowledging legislature had authority to eliminate "sudden passion" from consideration in the capital-murder context).[7]

---

[7] During oral argument, the State conceded that no cases in Texas have addressed whether the legislature violated due process in deciding not to permit the sudden passion defense in the context of capital murder when the defendant received a life sentence in lieu of the death penalty. The State argued, "[I]t does not make . . . sense that a capital murder defendant facing a death sentence would have less protection than a defendant who is not facing the death penalty." We agree and conclude that the principles enunciated in *Wesbrook* and *Mays* apply equally to

9

Atkins further argues the legislature violated due process under the Fourteenth Amendment when it eliminated sudden-passion manslaughter—which required a lesser degree of criminal culpability than that required for murder—as a lesser-included offense of murder, because the presence of sudden passion has traditionally been "the single most important factor in determining the degree of culpability attached to an unlawful homicide." Atkins cites *Patterson v. New York* in support of his argument, in which the Supreme Court upheld New York's murder statute. 432 U.S. 197, 216 (1977). That statute, unlike the statute in *Mullaney*, did not include "malice aforethought" as an element of the crime and was similar to section 19.02 in that regard. *Compare id*. at 199, *with* Tex. Penal Code § 19.02(b); *see also Mullaney*, 421 U.S. at 686 n.3. Under New York law, however, a defendant could show "emotional disturbance" as an affirmative defense to murder that, if proved by a preponderance of the evidence, would reduce the crime to manslaughter. *Patterson*, 432 U.S. at 206. The defense of emotional disturbance did not negate any elements the State had to prove to convict a defendant of murder, unlike in *Mullaney*, where the defendant was required to negate "malice aforethought" by showing sudden passion. *Id*. at 214-15. Thus, the New York statute did not violate the Due Process Clause. *Id*. at 216.

Atkins argues the statutory scheme in *Patterson* is distinguishable from that in Texas, because New York law recognized the lesser-included offense of

---

defendants convicted of capital murder facing the death penalty or a life sentence. *See Mays*, 318 S.W.3d at 388 ("[Appellant's] arguments fail to persuade us that the Texas Legislature did not have authority to eliminate the former statutory offense of 'sudden passion' manslaughter from consideration in the capital-murder context."); *Wesbrook*, 29 S.W.3d at 113 (acknowledging it was the legislature's prerogative to treat capital murder defendants differently from other murder defendants by not permitting defense of sudden passion in capital murder context and holding "appellant experienced nothing that affected the fundamental fairness of his trial in violation of any right to due process").

manslaughter when Texas law does not. However, in *Patterson*, the Supreme Court did not hold—or imply—that a state is required to recognize manslaughter as an offense with a lesser degree of criminal culpability than that required for murder. The court merely held that the New York statute did not unconstitutionally shift the state's burden to prove beyond a reasonable doubt all of the elements included in the definition of murder. *Id*. at 210, 216. *Patterson* does not support the broader proposition posited by Atkins that a legislature would violate due process by eliminating manslaughter as a lesser-included offense of murder.

In *Mays*, the Court of Criminal Appeals expressly recognized the Texas Legislature "ha[d] authority to eliminate the former statutory offense of 'sudden passion' manslaughter from consideration in the capital-murder context." 318 S.W.3d at 388. It also noted, "There is no free-floating, non-statutory, common-law right to an instruction on sudden passion and provocation in a capital-murder trial." *Id*. The legislature alone defines crimes and prescribes penalties. *Wesbrook*, 29 S.W.3d at 112. We conclude the legislature did not violate due process under the Fourteenth Amendment when it eliminated manslaughter as a lesser-included offense of murder. *See id*. at 112-13 (holding legislature did not violate due process when it eliminated sudden passion as a defense to capital murder).

We overrule Atkins' second issue.

We affirm the judgment of the trial court.


                              /s/          Martha Hill Jamison
                                           Justice
Panel consists of Justices Boyce, Jamison, and Busby.

Publish — TEX. R. APP. P. 47.2(b).

11