

# NUMBERS
## 13-13-00521-CR
## 13-13-00522-CR
## 13-13-00523-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **MICHAEL MANAHAN JR.,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

## On appeal from the 130th District Court
## of Matagorda County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez, and Justices Rodriguez and Longoria**
**Memorandum Opinion by Justice Longoria**

By one issue, appellant Michael Manahan Jr. challenges his conviction on one

count of indecency with a child (Count I) and two counts of aggravated sexual assault of

a child (Counts II and III). *See* TEX. PENAL CODE ANN. §§ 21.11, 22.021 (West, Westlaw through 2013 3d C.S.). We affirm as modified.

## I. BACKGROUND

B.M., appellant's adult daughter who was twenty-one years old at the time of trial, testified that she filed a police report accusing appellant of sexually abusing her throughout the course of her childhood.[1] B.M. testified that when she was approximately seven years old she began regularly visiting appellant in the trailer where he lived with her two brothers. She and appellant would sleep together in the top bunk. B.M. testified that at least twice, appellant removed her pants and rubbed "his penis against my vagina. He wouldn't penetrate me." B.M. also testified that appellant would also take her "into the bedroom and he would make me do oral sex on him" and that this happened "quite often" whenever she went to visit. B.M. testified that this abuse continued until she was fourteen years old and stopped permanently when she first began menstruating around that time. B.M. told the trial court that she filed the report at the encouragement of her fiancé, after she revealed the abuse to him because she "felt like he needed to know" before they married, and out of concern for the welfare of her half-sister, appellant's daughter, who was seven year's old at that time.

Detective Maria Guajardo of the Bay City Police Department testified that she investigated B.M.'s allegations. Detective Guajardo testified that she found B.M.'s medical records from her birth until she was approximately nine years old and that the records detailed "questionable vaginal tears and rectal bleeding at a very, very young age beginning almost at 3 years old." Guajardo testified that she believed that Child Protective

---

[1] We will use the initials of the two complainants to protect their privacy. *See* TEX. CODE CRIM. PROC. ANN. art. 57.02(b) (West, Westlaw through 2013 3d C.S.).

Services began an investigation when B.M. was approximately three years old but that the investigation was closed.[2] Guajardo further testified that B.M. told her of the possibility that appellant had abused M.W., the other complainant in this case.

M.W. testified that she became friends with B.M. when they were both in the sixth grade and that M.W. would often stay with B.M. at appellant's residence. During these visits, M.W. would sleep in the same bed with B.M. and appellant. M.W. testified that during a road trip to the "mud races," she and appellant stayed in appellant's truck while the rest of appellant's family went into the store. M.W. told the court that appellant placed her hand on his crotch area, told her "to rub it like outside of his pants at first," and then unzipped his pants, pulled out his penis and told her to masturbate him. M.W. testified that she complied because she "didn't want him to hurt me if I didn't do it."

M.W. testified that during the second trip to the mud races, she and appellant went to a corner store. During the drive, appellant "pulled out his penis and grabbed me, my hair, and put my head down there" and forced her to perform oral sex while he drove. Later that same night, appellant took B.M.'s brothers back to their grandmother's house, but rented two hotel rooms in town, one for himself and one for B.M. and M.W. M.W. testified that she woke up later that night when appellant removed the bottom half of her pajamas, turned her over onto her stomach, and placed his mouth onto her vagina. M.W. testified that appellant then unzipped his pants and placed his penis on top of her vagina, but it did not penetrate because she pushed him off. After appellant left, M.W. told B.M. about what occurred.

---

[2] B.M. testified that when she was three years old she remembers lying naked on a bed while appellant and his wife at the time rubbed Vaseline on her and that "it didn't feel right," but does not remember anything else.

T.M., appellant's son, also testified for the State. T.M. told the jury that during one of B.M.'s visits, when B.M. was approximately eight years old, he approached the door of appellant's room to ask him a question. T.M. testified that he witnessed appellant "sitting on the bed wrapped in a towel with . . . [B.M.] on her knees in front of him." T.M. testified that he was able to see this even though the door was closed because a "shim" that was supposed to be in the gap between the door and the wall of the trailer was missing. T.M. further testified that he did not fully understand what he saw at the time, but that as an adult he believes that he saw B.M. "giving . . . [appellant] oral sex."

Appellant elected to testify in his own defense. Appellant testified that B.M. would sleep in the couch's fold-out bed when she came to visit but that he would frequently wake up to find her in his bed. Appellant denied that all of the events related by B.M. and M.W. occurred. Appellant told the trial court that just before B.M. first contacted the police, he and B.M. had a fight when appellant was unable to loan her $5,000 to add to the down payment that B.M. and her fiancé were planning to put down on a house. Appellant testified that he rented a hotel room for B.M. and M.W. because he overheard his son K.M. say that K.M. would attempt to have sex with M.W. that night.

The case was tried to a jury, which returned a verdict of guilty on all counts. The jury assessed punishment at imprisonment for ten years on Count I, forty-five years on Count II, and twenty-five years on Count III. The trial court ordered that the sentence on Count II run consecutively to the sentence on Count III. *See id.* § 3.03(b); TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West, Westlaw through 2013 3d C.S.). This appeal followed.

4

## II. DISCUSSION

By one issue, appellant argues that the evidence is legally insufficient to support the verdict on all three counts.

### A. Standard of Review and Applicable Law

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact, in this case the jury, is the sole judge of the credibility of witnesses and the weight, if any, to be given to their testimony. *Garcia v. State*, 367 S.W.3d 684, 686–87 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op). As a reviewing court, we "may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts." *Atkins v. State*, 402 S.W.3d 453, 457 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)). The State may prove the elements of an offense by either direct or circumstantial evidence, and "circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

We measure the sufficiency of the evidence supporting a conviction "by the elements of the offense as defined by the hypothetically correct jury charge for the case," applied to the particular facts of the case. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Atkins*, 402 S.W.3d at 457 (quoting *Malik*, 953 S.W.3d at 240).

By Count I, the State alleged that appellant committed indecency with a child by causing M.W. to touch appellant's penis. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). A person commits the offense of indecency with a child if he "engages in sexual contact with the child or causes the child to engage in sexual conduct." *Id.* The statute defines the term as "any touching by a person, including touching through the clothing, of the anus, breast, or any part of the genitals of a child" or, "any touching of any part of the body of the child, including touching through the clothing, with the anus, breast or any part of the genitals of a person," that is done "with the intent "to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c). The hypothetically correct jury charge for this offense required the State to prove that appellant (1) with intent to gratify his sexual desire, (2) caused M.W. to touch his sexual organ. *See id.*

By Counts II and III, the State alleged that appellant committed aggravated sexual assault of a child. *See id.* § 22.021. The hypothetically correct jury charge for both counts

6

required the State to prove that appellant: (1) intentionally or knowingly; (2) caused his penis to contact or penetrate B.M.'s vagina (Count II), and contact M.W.'s mouth (Count III); (3) when both complainants were younger than fourteen. *See id.*; *Ozuna v. State*, 199 S.W.3d 601, 606 (Tex. App.—Corpus Christi 2006, no pet.).

### B. Analysis

Appellant argues that the evidence is insufficient because "there was no medical evidence of a sexual assault, there was no physical evidence presented identifying Appellant as the perpetrator, and the record in this cause shows multiple issues regarding the credibility and reliability of [B.M.] and [M.W.]." However, it is well-settled that testimony of a complainant alone "is sufficient to support a conviction for indecency with a child or aggravated sexual assault" of a child. *Cantu v. State*, 366 S.W.3d 771, 775 (Tex. App.—Amarillo 2012, pet. ref'd); *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.). Furthermore, corroboration of the complainant's testimony "by medical or physical evidence is not required." *Cantu*, 336 S.W.3d at 776; *Soto*, 267 S.W.3d at 332; *Ozuna*, 199 S.W.3d at 606; *see* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West, Westlaw through 2013 3d C.S.) (stating that testimony of complainant alone is sufficient to sustain a conviction for aggravated sexual assault of a child). The testimony of B.M. and M.W., detailed above in relevant part, is therefore sufficient to support the jury's findings of guilty on Counts I, II, and III. Regarding the alleged "multiple issues regarding the credibility and reliability" of the testimony of B.M. and M.W., determining which witnesses and evidence to credit is within the sole province of the jury, and we may not disturb that determination. *See Garcia*, 367 S.W.3d at 686–87; *Hooper*, 214 S.W.3d at 13.

7

Appellant acknowledges these authorities, but he argues that we should revisit this issue so that "child witness testimony alone can no longer be sufficient to support" convictions on these charges but as an intermediate appellate court, "we are duty bound to follow precedent issued by the Texas Court of Criminal Appeals." *Kiffe v. State*, 361 S.W.3d 104, 109 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).[3]

Accordingly, we overrule appellant's sole issue.

### C. Modification

Our review of the record has revealed a mistake in the judgments of conviction in cases 13-13-522-CR and 13-13-523-CR. The judgment of conviction in both cases recites that the charged offense is "aggravated sexual assault," but under the heading "Statute for Offense," each cites section 22.01 of the penal code, which is the provision involving simple assault. *See* TEX. PENAL CODE ANN. § 22.01 (West, Westlaw through 2013 3d C.S.). This Court may modify the record to make it speak the truth when we have the necessary information to do so. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *see* TEX. R. APP. P. 43.2(b). We therefore modify the judgments of conviction in the cases 13-13-522-CR and 13-13-523-CR to reflect the correct statutory provision under which appellant was convicted, section 22.021. *See* TEX. PENAL CODE ANN. § 22.021.

---

[3] Appellant also mentions that M.W. did not "give any specific date for which a jury could rely to support Appellant's conviction." To the extent that appellant is making a separate argument, "[i]t is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997) (en banc).

## III. CONCLUSION

We affirm the judgments of the trial court as modified.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of June, 2014.