**Affirmed and Memorandum Opinion filed September 22, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00560-CR

---

### RUSSELL SINGLETON LEONARD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 12**
**Harris County, Texas**
**Trial Court Cause No. 1949831**

---

## M E M O R A N D U M   O P I N I O N

Appellant Russell Singleton Leonard appeals his conviction for Class A misdemeanor driving while intoxicated. In three issues, appellant argues (1) the trial court erred in denying his motion to suppress evidence; (2) the trial court erred in submitting an erroneous instruction to the jury; and (3) the evidence is insufficient to support the conviction. We affirm.

## BACKGROUND

Appellant's sister called 911 and told the dispatcher that her brother was "out wandering around drunk." Appellant's sister wanted to take appellant to the emergency room, but did not believe the hospital would accept appellant if he was "combative." The dispatcher transferred appellant's sister to medical dispatch. When the medical dispatcher asked for the sister's location, she said, "Oh no, he's gonna drive." When appellant drove away, the sister identified herself as Patty and gave the dispatcher her phone number. Patty told the dispatcher that she was trying to prevent her brother from "driving intoxicated." When appellant began to drive, Patty gave the license plate number to the dispatcher. The medical dispatcher transferred Patty back to the police dispatcher. When Patty was transferred back to the police dispatcher, she was in her car following appellant. After again giving her name and phone number to the police dispatcher, Patty reported that her brother was driving intoxicated, and that she was in a separate car following him. The police dispatcher transferred Patty to the officer who would respond to the call. Patty identified the car as a white Challenger driving with the hazard lights on.

Officer Araiza of the Houston Police Department testified that he responded to a 911 call about an intoxicated driver. Araiza saw the Challenger and Patty's car following 20 to 25 feet behind. Patty pointed to appellant's car, and said, "That's the vehicle. That's the vehicle." Araiza verified the car's description and license plate with the 911 dispatcher, and initiated a traffic stop. At the time Araiza initiated the traffic stop he knew that the 911 caller was chasing appellant because appellant had been drinking and was now driving.

When Araiza approached appellant he began asking basic questions attendant to a traffic stop. As appellant answered Araiza detected the odor of alcohol on appellant's breath. Araiza also noticed appellant's eyes were extremely

2

red and bloodshot. Appellant did not respond to Araiza's questions in a normal manner, and Araiza saw an opened 30-pack of beer in the front passenger seat of appellant's vehicle. One or two beers were missing from the package. Araiza also saw an open beer in the car. At Araiza's request, appellant stepped out of the car. Appellant's speech was slurred, and he was unable to stand without leaning on the car. Appellant said he had consumed two beers. Araiza tried to conduct field sobriety tests, but appellant was not responsive. Araiza contacted Sergeant Donato, who was more experienced with intoxicated drivers. Donato instructed Araiza to transport appellant to "Central Intox."

Sergeant Donato testified that when he first came into contact with appellant, appellant exhibited signs of intoxication in that he smelled of alcohol, his speech was slurred, and his eyes were glassy. Donato attempted to administer the field sobriety tests, but appellant refused the first two tests because he was physically unable to complete them. Donato then asked appellant to perform a finger counting test and to recite portions of the alphabet forward and backward. Appellant failed the counting test, but passed the alphabet test. Donato also observed appellant lose his balance several times. A video of these tests was admitted into evidence and played for the jury.

Donato administered two breathalyzer tests at 2:49 p.m., approximately one and a half hours after Araiza stopped appellant.[1] The tests produced evidence of alcohol concentrations of 0.216 and 0.217. The Department of Public Safety employee who testified about the test results stated that the employee did not have enough information to extrapolate an alcohol level at the time appellant was driving.

---

[1] Araiza testified that he stopped appellant at approximately 1:21 p.m.

In his third issue, appellant argues the evidence is insufficient to support his conviction. Specifically, appellant contends the evidence is insufficient to prove that an analysis of his breath showed an alcohol concentration level of at least 0.15 at or near the time of the commission of the offense.

When reviewing sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

We measure evidentiary sufficiency against the "elements of the offense as defined by the hypothetically correct jury charge for the case." *Fuller v. State*, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002). That is, "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). This standard "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Id.*; *Atkins v. State*, 402 S.W.3d 453, 457 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

It is an offense in Texas to operate a motor vehicle while intoxicated in a public place. To establish a Class B misdemeanor, the State must prove the

defendant operated a motor vehicle while "intoxicated," meaning either (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, or (2) having an alcohol concentration of 0.08 or more. *See* Tex. Penal Code Ann. §§ 49.01(2), 49.04(a),(b). To establish a Class A misdemeanor, as here, the State must also prove the defendant had an alcohol concentration of over 0.15, determined at the time of the analysis rather than at the time of driving. Tex. Penal Code Ann. § 49.04(d) (providing that State must prove "an analysis of a specimen of the person's blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed," to elevate offense to Class A misdemeanor).

Therefore, we review whether the evidence was sufficient to show that appellant was intoxicated at the time of driving and whether appellant's alcohol concentration level was 0.15 or more at the time the analysis was performed. *See* Tex. Penal Code Ann. § 49.04.

Araiza testified that when he stopped appellant's vehicle and began asking questions attendant to a traffic stop, Araiza noticed the odor of alcohol on appellant's breath, and that appellant's eyes were extremely red and bloodshot. Appellant's speech was slurred and he was unable to stand without leaning on the car. Appellant was unable to perform Araiza's requested field sobriety tests. Approximately one and a half hours later, breathalyzer tests revealed alcohol concentrations of 0.216 and 0.217. Appellant argues the evidence was insufficient to prove that an analysis of his breath showed an alcohol concentration level of at least 0.15 at or near the time of the commission of the offense. As discussed above, under the hypothetically correct jury charge analysis, the State was not required to prove the alcohol concentration level at the time of the offense as appellant contends, but was required to prove the alcohol concentration at the time of the

5

analysis. Because the evidence showed alcohol concentration of more than 0.15 at the time of the analysis, the evidence was sufficient to support the conviction. We overrule appellant's third issue.

## MOTION TO SUPPRESS

In his first issue appellant argues the trial court erred in denying his motion to suppress the traffic stop based on a lack of reasonable suspicion. When the State introduced the 911 call into evidence, appellant objected on hearsay grounds. Appellant requested a hearing outside the presence of the jury and also moved to suppress the traffic stop based on the fact that the 911 call did not provide specific and articulable facts that, combined with rational inferences from those facts, led Araiza to reasonably conclude that at the time of the stop, appellant was, had been, or would soon be engaged in criminal activity. Appellant argued that Patty's comments that appellant was intoxicated were conclusory and could not support reasonable suspicion to stop appellant. The trial court denied appellant's motion.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). The trial court's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *Id*. But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial court's ruling de novo. *Id*. Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of fact and law that is reviewed de novo on appeal. *Id*. When, as in this case, the trial judge does not make formal findings of fact, we uphold the trial court's ruling on any theory of law applicable to the case and presume the court made implicit findings in support of its ruling if those findings are supported by the record. *State v. Ross*, 32 S.W.3d

853, 855–56 (Tex. Crim. App. 2000).

Under the Fourth Amendment, a warrantless detention of a person that amounts to less than a full custodial arrest must be justified by a reasonable suspicion. *Kerwick*, 393 S.W.3d at 273. "[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185 (2004). Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him or her to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Kerwick*, 393 S.W.3d at 273. These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime, but the likelihood of criminal activity need not rise to the level required for probable cause to arrest. *Id*. at 273–74. The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent. *Id*. at 274. A reasonable-suspicion determination must be based on the totality of the circumstances, and reasonable suspicion may exist even if the circumstances presented are as consistent with innocent activity as with criminal activity. *Id*; *Terrell v. State*, 473 S.W.3d 420, 423 (Tex. App.—Houston [14th Dist.] 2015, no pet.)

The detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; instead, the cumulative information known to cooperating officers at the time of the stop must be considered in determining whether reasonable suspicion exists. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). A police dispatcher is

generally regarded as a cooperating officer for purposes of this analysis. *See id.* Moreover, information provided to police by a citizen-informant who identifies herself and may be held to account for the accuracy and veracity of her report may be regarded as reliable. *Id.* at 914–15. The only question in that scenario is whether the information provided by the citizen—viewed through the prism of the detaining officer's knowledge and experience—objectively supports a reasonable suspicion to believe that criminal activity is afoot. *Id.* at 915.

In this case, there is no question as to the reliability of the citizen informant. Appellant's sister identified herself by name and gave her phone number to the police dispatcher. Patty's report was based on first-hand perceptions, which she continuously reported to the 911 dispatcher and Araiza. Araiza was entitled to rely on the objective information reported by Patty in making the investigative stop. *See Derichsweiler*, 348 S.W.3d at 915. Even if Araiza was not aware of all of the information given by Patty, the 911 dispatcher was. The issue here is whether the totality of the reliable information provided specific, articulable facts that, combined with reasonable inferences to be derived from those facts, would lead to the reasonable conclusion that appellant was committing some type of criminal activity.

Appellant relies on *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005), for the court's analysis about the unreliability of conclusory reports to police. In *Ford*, the detaining officer testified that he pulled the defendant over after observing the defendant following another vehicle "too closely." *Id.* at 491. The officer explained that he believed the defendant had committed the traffic offense of "[f]ollowing too close." *Id.*; *see also* Tex. Transp. Code § 545.062(a) (prescribing safe following distances for vehicles). The officer did not provide any specific information regarding conditions at the time of the stop beyond the time of

day and did not offer any details regarding how closely the defendant was following the other vehicle. The trial court and the court of appeals held that the officer's testimony was sufficient to support a reasonable suspicion justifying an investigative detention. *Ford*, 158 S.W.3d at 491–92. The court of appeals specifically reasoned that the officer's training and experience qualified him to make a judgment regarding whether the defendant was violating the law by following the other vehicle too closely given the conditions present on the roadway. *Id*. The Court of Criminal Appeals reversed, however, holding that the officer's testimony was conclusory and failed to offer specific, articulable facts that a court could use in assessing whether the officer's opinion was objectively reasonable. *Id*. at 493–94. The Court acknowledged that an officer's training and experience may factor into the analysis but stated that relying on those factors without objective factual support was inappropriate. *Id*.

*Ford* is distinguishable from the case before us. Unlike the officer in *Ford*, Araiza did not base reasonable suspicion to stop appellant solely on his training and experience. Araiza admitted he stopped appellant based on the 911 dispatch and Patty's report that appellant was driving while intoxicated. Appellant argues that Patty's "conclusory statement that Appellant was intoxicated was not an effective substitute for specific facts." The 911 call in this case contained more than a simple statement that appellant was intoxicated. The call began with Patty's plea for help getting her brother to a psychiatric hospital and a report that he was "out wandering around drunk." Patty described appellant as combative and asked for medical help. Before Patty could confirm her location to the dispatcher, she said, "Oh no, he's gonna drive." At that time, the 911 dispatcher determined that the situation would be better handled by police, not medical personnel. Patty followed appellant in her vehicle and relayed information about appellant's driving

9

and location to the dispatcher and Araiza in real time.

"Reasonable suspicion depends on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Navarette v. California*, ___ U.S. ___, 134 S.Ct. 1683, 1690 (2014) (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996)). In this case, Araiza was given more information than a simple statement that appellant was intoxicated. The 911 call was made by a sister concerned for her brother's welfare. She stated that she knew he was intoxicated and combative. Before getting in the car, appellant was "wandering around drunk." Patty tried to prevent appellant from driving, but was unable to do so. Araiza also was told that appellant was driving with his hazard lights flashing.

Considering the totality of the circumstances, we conclude that the record contains sufficient facts to support a finding that Araiza had a reasonable basis upon which to conclude that appellant was driving while intoxicated when he initiated the stop. *See Brother v. State*, 166 S.W.3d 255, 259–60 (Tex. Crim. App. 2005) (officer had reasonable suspicion to stop driver when citizen gave a detailed description of suspect's car, location, and erratic driving, and followed behind suspect assisting officer in identifying the proper vehicle). We overrule appellant's first issue.

## JURY CHARGE

In his second issue appellant argues the trial court erred in submitting a jury charge that did not track the language of the statute. At the charge conference, appellant's counsel argued that under *Navarro v. State*, 469 S.W.3d 687 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd), the State was required to prove as an element of the offense that appellant's blood alcohol level was 0.15 or higher. During the ensuing discussion, appellant insisted that the jury charge should read

10

exactly as the information read, not the statute.

The information alleged that appellant, "on or about MARCH 10, 2014, did then and there unlawfully operate a motor vehicle in a public place while intoxicated." The information further alleged that "at or near *the time of the commission of the offense*, an analysis of the Defendant's BREATH showed an alcohol concentration of at least 0.15." (emphasis added) Appellant was charged under section 49.04(d) of the Texas Penal Code, which provides, "If it is shown on the trial of an offense under this section that an analysis of a specimen of the person's blood, breath, or urine showed an alcohol concentration level of 0.15 or more *at the time the analysis was performed*, the offense is a Class A misdemeanor." (emphasis added) Tex. Penal Code Ann. § 49.04(b).

After a lengthy discussion on the jury charge with regard to the element of alcohol concentration of 0.15, the trial court recessed to permit an appellate attorney from the district attorney's office to opine on the issue. The appellate attorney pointed out that the information in this case did not track the statute. The information referred to an alcohol concentration measured at the time of the offense. The statute requires proof of alcohol concentration above 0.15 at the time the analysis is performed. The State argued that the charge should track the language of the statute. Appellant objected to the court's proposed charge, which tracked the language of the statute. After more research, the following exchange occurred between the appellate attorney from the State and appellant's attorney:

> MS. DAVIS [State]: So just to understand, Mr. Flood, you would have no objection if it trapped [sic] the language of the information of what the Judge said that it's at or near the commission of the offense?
>
> MR. FLOOD [defense counsel]: That's what I'm requesting. Right.
>
> MS. DAVIS: Okay.
>
> MR. FLOOD: My objection is that it differs from the information that

11

we were arraigned under.

MS. DAVIS: Okay. Based on kind of what I was reading as well as my phone-a-friend, Judge, I think that we'll withdraw our proposal and we'll accept Mr. Flood's at or near the time of the commission of the offense but — and we also agree it should not be a special issue.

On appeal appellant complains that the trial court erred in submitting a charge that did not track the language of the statute. The record reflects, however, that appellant requested the erroneous charge. When a defendant requests a charge, and the court submits it, he cannot complain of that charge on appeal. *Tucker v. State*, 771 S.W.2d 523, 534 (Tex. Crim. App. 1988). Even if the charge is later found to be erroneous, the accused cannot first invite error and then complain about it on appeal. *Id.*; *Ortiz v. State*, 144 S.W.3d 225, 230 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Because appellant cannot take advantage of an error that he invited, we overrule appellant's second issue.

We affirm the trial court's judgment.


/s/     Martha Hill Jamison
         Justice


Panel consists of Justices Boyce, Christopher, and Jamison.
Do Not Publish — Tex. R. App. P. 47.2(b).